## Gathright's Trustee v. Gaut et al.

Jan. 27, 1939.

WILLIAM W. CRAWFORD for appellant.

J. VERSER CONNER for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

Under the will of Mrs. Emma E. Gathright, deceased, the appellees, Mrs. Emma Drabelle Gaut and Mrs. Emma Carter Szabo, are entitled in equal parts to the income from her estate, which is held by appellant as trustee under her will. Mrs. Gaut is empowered to dispose by will of the portion of the estate from which she is receiving the income at the time of her death, such disposition, however, to become effective only upon the death of Mrs. Szabo. Mrs. Szabo is also authorized to dispose by will of that part of the estate from which she is receiving the income at her death, except the portion which Mrs. Gaut is authorized thus to dispose of. No devise over is made in the event of the failure to exercise the powers thus conferred. It is seen, therefore, that if Mrs. Gaut and Mrs. Szabo exercise the powers conferred on them, no other person has any interest in the trust fund held by appellant.

Appellees filed this action against appellant for a declaration of rights, the controversy arising out of the fourth clause of Mrs. Gathright's will, which says:

"Fourth: The executor shall have no power to sell any property possessed by me at my death or by said executor at any future time or make any new investments without the assent of Jesse N. Gathright, of Louisville, Kentucky, *or* Joseph Perry Gaut of Knoxville, Tennessee; should either of said persons be incapacitated from acting or refuse to act in the matter, no purchase or sale or reinvestment shall be made by said Executor without securing the consent of a Judge of the Jefferson Circuit Court * * *."

Jesse N. Gathright, named in this clause, is now dead and Joseph Perry Gaut resides in the State of Tennessee. It appears from the petition that the trustee holds a large number of different types of securities and that it is continually necessary to make sales and reinvestments in order properly to execute the trust, and it is alleged that the delay and expense of obtaining a decree of the Jefferson Circuit Court for this purpose (if one is required in the circumstances) are very burdensome and that in many instances when it is desirable or necessary to sell securities the expense incident to securing such a decree more than offsets the advantage to be obtained. It is alleged that several of the judges of the Jefferson Circuit Court have refused to act in the capacity of advisor.

Both appellant and appellees were desirous of remedying this situation, as illustrated by the filing of this action by appellees. The Chancellor entered judgment declaring that the fourth clause of the will was ambiguous and that it was not the duty or obligation of the judges of the Jefferson circuit court to act as advisor to the trustee, and that the Chancellor declined so to act; that in order that the intention of the testatrix might be carried out, one Morton Boyd was appointed as an advisor to appellant as trustee instead of Jesse N. Gathright, deceased, and he was authorized to exercise all power and authority vested in Gathright by the will.

It will be observed that the language in the fourth clause of the will above quoted does not, in the event one of the advisors is incapacitated to act, require that a

decree of the Jefferson Circuit Court shall be obtained before the sale can be made, but only provides that same may not be done without securing the consent of a judge of the Jefferson Circuit Court. It is apparent that the will was drawn by an attorney who was fully cognizant of the difference between the consent of a judge of the court and a decree of the court, and we therefore construe the language of this clause to mean that if one of the advisors is incapacitated to act, any one of the judges of the Jefferson Circuit Court should be substituted as an advisor in his place. The testator evidently had confidence in the class of persons who occupied this official status, and for this reason was willing that any one of the judges should be substitute advisor in the case of incapacity of the advisors named in the will.

The advisors are not, strictly speaking, trustees under the will, but their status and their duties partake of the nature of the status and duties of a trustee, or it might be proper to consider them as co-trustees with the principal one, but with limited authority. The settlor may appoint an advisor to his trustee whose consent to certain acts may be prerequisite to the valid execution of parts of the trust. Trusts and Trustees, by Bogert, Vol. 1, sec. 122; Marshall's Trustee v. Marshall, 225 Ky. 168, 7 S. W. (2d) 1062, 61 A. L. R. 1365. We think they may be said to be advisory trustees with strictly limited capacities and duties, that is, an assistant to the trustee limited in his capacity by the terms of the trust, having no right or authority further than the capacity of advising as provided in the instrument.

A settlor may make all the powers and duties of a trust personal and thereby make the trust dependent upon the acceptance of the named trustee and its continuance dependent on the named trustee continuing in office. Trusts and Trustees by Bogert, Vol. 3, sec. 553. As this power exists in the settlor of a trust, it necessarily follows that a settlor may make the powers and duties granted to an advisor personal also, and, in this event, no one could be substituted for him.

It seems clear that the purpose of the fourth clause of the will was that the trustee should continue to have power of sale and reinvestment but was only to exercise this power with the consent of an advisory committee, or advisory trustees, and that the limited and restricted trustee powers granted to the named advisors was not

intended to be a power personal only to the advisors named. We reach this conclusion because this clause provides for a substitution on the advisory committee in the event of incapacity of an advisor and the substitution is not made a personal matter but is extended to a class and a continually changing class. Any judge of the Jefferson Circuit Court could be substituted. It appears to have been the purpose of testator only that the advisory committee should be continued under the safeguard of some person occupying this high official position.

As the duties of these advisors partake of the nature of trustee duties, and as we have indicated that the advisors partake of the nature of trustees in a very strict and limited sense, and as it was not the intention of the testator to make the exercise of these advisory duties purely personal, equity will not permit the trustee or advisory duties specified in the will to fail for want of advisory trustee to exercise them. It is well settled that equity will never permit a trust to fail for want of a trustee, but will appoint a trustee or execute the trust by its officers. Brock v. Conkwright, 179 Ky. 555, 200 S. W. 962; Willett et al. v. Willett, Adm'r, et al., 197 Ky. 663, 247 S. W. 739, 31 A. L. R. 426.

By the judgment in this case, the Chancellor appointed a new member of the advisory committee and provided that the principal trustee should make no sale or investment of said trust without the assent of either Joseph Perry Gaut, the living committeeman, or Mr. Boyd, the committeeman appointed, and this judgment would be affirmed except for one thing. It is alleged in the petition that some of the judges of the Jefferson circuit court had refused to act in an advisory capacity. As the will provided that any one of these judges might be the substitute advisor, we are of the opinion that before an advisory committeeman may be appointed by the Chancellor, it is necessary to show that all the judges of the Jefferson Circuit Court refused so to act. In the event this showing is made, it will be proper for the Chancellor to appoint a substitute advisory committeeman as was done by the judgment, in order that an advisory committee may be continued in accordance with the provisions of the will. By this procedure the intention of the testator to have a continuing advisory committee will be carried out. The specific manner of

continuing the committee as provided in the will cannot be carried out, owing to the refusal of all the designated class (the judges) to act, but the end that testatrix had in mind will, as nearly as possible, be accomplished.

The judgment is reversed for the purpose of having it manifested in the record that all of the judges of the Jefferson Circuit Court decline to act, so as to create a vacancy in the position under the specific terms of the will and manifesting the necessity for the court to designate a substitute advisor, and, when done, a judgment in accordance with the one rendered will conform to our views of the law.