DORA STEWART LEWIS, MARY WASHINGTON STEWART BORLE and
PAULA BROWNING DENCKLA, Defendants Below,

Appellants,

*vs.*

ELIZABETH DONNER HANSON, as Executrix and Trustee Under the
Last Will of Dora Browning Donner, Deceased, Plaintiff Below,

Appellee,

WILMINGTON TRUST COMPANY, a Delaware corporation, as Trustee
under three separate Agreements, (1) and (2) with William H.
Donner dated March 18, 1932 and March 19, 1932, and (3)
with Dora Browning Donner dated March 25, 1935, and others,
Defendants Below,

Appellees.

*Supreme Court of Delaware on Appeal January 14, 1957*

236

*Arthur G. Logan* and *Aubrey B. Lank,* Wilmington, for appellants.

*Robert B. Walls, Jr.,* Wilmington, guardian *ad litem* for Dorothy B. R. Stewart and William Donner Denckla, appellee *pro se.*

*Caleb S. Layton,* Wilmington, for Wilmington Trust Co., appellee.

*David F. Anderson,* Wilmington, for Delaware Trust Co., appellee.

*Edwin D. Steel, Jr.,* guardian *ad litem* for Joseph Donner Winsor, Curtin Winsor, Jr., and Donner Hanson, appellee *pro se.*

WOLCOTT and BRAMHALL, Justices, and CAREY, Judge, sitting.

WOLCOTT, Justice: This appeal involves two fundamental questions: (1) Whether a purported *inter vivos* trust and the exercise of a power of appointment under it are valid or invalid; and (2) whether the parties may litigate the question of validity in a Delaware court because of an adverse adjudication upon the point by a Florida court.

The action below, commenced by Elizabeth Donner Hanson[1] as the Florida executrix of the settlor's will and, also, in her capacity as trustee under the residuary clause of that will, seeks a declaratory judgment establishing the persons entitled to $417,000 which was distributed by the *inter vivos* trustee pursuant to the exercise of the power of appointment.

The parties named as defendants in the action include Wilmington Trust Company, trustee under the trust agreement in question and, as such, the distributor of the $417,000, Delaware Trust Company, trustee, the recipient of $400,000 of the trust assets, the recipients of the balance of $17,000, and all possible claimants of the

1. Since its institution, she has been enjoined by the Florida court from prosecuting the action. Since that time, neither she nor her counsel has taken any part in the litigation.

trust corpus, either under the exercise of the power of appointment or under the settlor's Florida will.

The cause came up for decision below on four cross-motions for summary judgment. It will suffice to state that the defendants divide themselves into two contending groups. One group, which we will call the "Lewis Group", maintains that the trust agreement is invalid as an *inter vivos* trust instrument and that, accordingly, the exercise of the power of appointment was testamentary in character and as such, ineffective under Florida law to pass any interest. The Lewis Group contends that the entire trust corpus comprises part of the Florida estate of the settlor and passes under her will.

The second group, which we will call the "Hanson Group" maintains that the trust agreement is valid and that, accordingly, the transfer of $417,000 pursuant to the exercise of the appointment is legally sufficient to pass title. Needless to say, the adoption of the contention of one group will benefit it financially to the loss of the other.

The Acting Vice Chancellor granted summary judgment in favor of the Hanson Group, holding that the trust agreement was a valid *inter vivos* trust; that the exercise of the power of appointment was effective to pass title to the $417,000, and that there was no estoppel resulting from the Florida judgment. From this decision the Lewis Group appeals.

The facts are not in dispute. On March 25, 1935, Dora Browning Donner (hereafter Mrs. Donner), then being a resident of Pennsylvania, entered into a trust agreement with Wilmington Trust Company and deposited certain securities with it as the trust corpus. By the terms of the agreement Wilmington Trust Company was directed to manage, invest and reinvest the trust corpus and to pay over the net income to Mrs. Donner for her life who reserved to herself a power of appointment of the corpus exercisable either by instrument or by will. Failing the exercise of the power, the agreement directed that the trust corpus be distributed by the trustee at her death to her issue surviving, or to her next of kin.

.

Specific powers were conferred upon Wilmington Trust Company, as trustee, which in substance were the ordinary powers granted to a trustee. However, it was specified that Wilmington Trust Company could exercise certain of the powers "only upon the written direction of, or with the written consent" of a trust advisor. These powers were (1) to sell trust assets, (2) to invest proceeds of sale of trust property, and (3) to participate in mergers and reorganizations of corporations whose securities were held as part of the trust assets.

In the agreement, Mrs. Donner designated a trust advisor and reserved the right to nominate other advisors at any time during her lifetime. She also reserved the right to amend, alter or revoke the agreement in whole or in part at any time, as well as the right to change from time to time the trustee. On one occasion, she withdrew $75,000 from the trust corpus, which sum she later replaced.

On two different occasions prior to 1949, Mrs. Donner executed instruments exercising the power of appointment. Finally, on December 3, 1949,[2] by a non-testamentary instrument, she exercised the power of appointment, specifically revoking the earlier exercises by her of the power, and directing the Wilmington Trust Company, six months after her death, to pay over a total of $17,000 to Bryn Mawr Hospital and certain family retainers, $200,000 to Delaware Trust Company in trust for Joseph Donner Winsor, $200,000 to Delaware Trust Company in trust for Donner Hanson, and the residue of the corpus to the executrix of her will.

In 1944, Mrs. Donner changed her residence from Pennsylvania to Palm Beach County, Florida where she was domiciled at her death in 1952. Her will was probated in Florida and Elizabeth Donner Hanson duly qualified as executrix. The residuary clause of her will directed her executrix to pay from the residuary estate, which specifically included the balance of the trust corpus not appointed in her lifetime, all death taxes on property appointed from the trust corpus during her lifetime, and to divide the balance remaining into two equal parts, one part to be transferred to Delaware Trust Com-

2. Later amended in a minor aspect.

pany in trust for Katherine N..R. Denckla, a daughter; and the other part to be transferred to Elizabeth Donner Hanson in trust for Dorothy B. R. Stewart, another daughter, for her life, and upon her death to Delaware Trust Company in trust for Katherine Denckla.

At the death of Mrs. Donner the trust corpus held by Wilmington Trust Company amounted to in excess of $1,490,000. Thereafter, pursuant to the directions contained in the exercise of the power of appointment Wilmington Trust Company distributed assets in the aggregate amount, of $417,000 and transferred a portion of the balance of the corpus to the executrix of the will of Mrs. Donner.

In January, 1954 the two residuary beneficiaries under the will of Mrs. Donner [3] brought an action for declaratory judgment in Palm Beach County, Florida against Mrs. Hanson, individually and as executrix, Wilmington Trust Company, Delaware Trust Company, and some of the other possible claimants to the assets passing under the residuary clause of the will of Mrs. Donner.[4] In this action a judgment was sought determining what property passed under the will of Mrs. Donner, and the authority of the executrix over the assets held by Wilmington Trust Company under the 1935 agreement.

Neither Wilmington Trust Company nor Delaware Trust Company were served personally in the Florida action, nor did either of them appear. None of the trust assets held by Wilmington Trust Company has ever been held or administered in Florida, nor has Wilmington Trust Company ever done business in the State of Florida.

On January 14, 1955 the Circuit Court of Palm Beach County, Florida entered a decree [5] holding that it lacked jurisdiction over the trust assets in Delaware and over Wilmington Trust Company, Dela-

---

3. Katherine Denckla appeared in her own person. Dorothy Stewart appeared by a guardian.

4. Some of the family retainers, the recipients of a total of $3,000 from the distribution pursuant to the exercise of the power of appointment, were not named as parties.

5. The Florida decree was entered after the instituting of suit in Delaware by the executrix.

ware Trust Company and the other non-answering defendants, and directed that the complaint be dismissed without prejudice as to all of them. It was also held that no present interest passed to any beneficiary other than Mrs. Donner under the agreement of 1935 and that the exercise of the power of appointment by her was testamentary in character and, as such, invalid under Florida law because it was not subscribed by two witnesses. It was held, therefore, that the assets held by Wilmington Trust Company passed under the will of Mrs. Donner, and that the distribution thereof was to be made in accordance with the residuary clause.

Thereafter, an appeal was taken to the Supreme Court of Florida by the equivalent of the Hanson Group seeking a reversal of the holding of invalidity of the 1935 trust and the exercise of the power of appointment. Similarly, the equivalent of the Lewis Group by cross-appeal sought a reversal of the holding of lack of jurisdiction over Wilmington Trust Company and Delaware Trust Company.

The Supreme Court of Florida handed down its opinion, 100 *So.2d* 378, affirming that portion of the decree adjudging the invalidity of the trust and the exercise of the power of appointment, and reversing that portion of the decree holding that Florida had no jurisdiction over Wilmington Trust Company and Delaware Trust Company.

In the interim, while the appeal was pending in Florida, the Lewis Group perfected its appeal in this court from the judgment of the Acting Vice Chancellor and argued it before us.

In the argument and on the briefs, the main emphasis was placed by the Lewis Group upon the estopping effect of the Florida judgment. In deciding this appeal, however, we think a more logical approach to what has now become a headlong jurisdictional collision between states is to consider first the question of what law governs the basic validity of the trust agreement and the exercise of the power of appointment, and whether or not under the applicable law the instruments are legally effective as such. We therefore take up first the question of essential validity of the trust and the exercise of the power of appointment.

There is no dispute concerning the pertinent facts. Wilmington Trust Company at all times has done business in Delaware. The trust agreement was executed in Delaware. The assets comprising the trust corpus were delivered to Wilmington Trust Company and retained by it in Delaware. The trust was administered wholly within Delaware. At the time the agreement was executed, Mrs. Donner was a resident of Pennsylvania.

In determining the situs of a trust for the purpose of deciding what law is applicable to determine its validity, the most important facts to be considered are the intention of the creator of the trust, the domicile of the trustee, and the place in which the trust is administered. *Wilmington Trust Co. v. Wilmington Trust Co., 26 Del.Ch. 397, 24 A.2d 309, 139 A.L.R. 1117; Wilmington Trust Co. v. Sloane, 30 Del.Ch. 103, 54 A.2d 544; Annotation 89 A.L.R. 1033.*

Generally speaking, a creator of an *inter vivos* trust has some right of choice in the selection of the jurisdiction, the law of which will govern the administration of the trust. *Wilmington Trust Co. v. Wilmington Trust Co., supra.* This trust agreement was signed and the securities delivered to a trustee doing business in Delaware. We think that this circumstance clearly indicates the intent of Mrs. Donner to have the trust administered and governed according to the law of Delaware. I Beale, *The Conflict of Laws,* 599.

Formerly, some courts emphasized the domicile of the settlor in deciding what law governed, but the more recent trend of decisions has placed considerably more emphasis on the location of the trust property and its place of administration. Land, *Trust in the Conflict of Laws,* § 23; 1A Bogert, *Trusts and Trustee,* § 211, p. 327; *Restatement, Conflict of Laws,* § 294(2). The manifest intention of Mrs. Donner to create a Delaware trust with a Delaware trustee, the deposit of the trust assets in Delaware, and the administration of the trust in Delaware, make it clear that the situs of the trust created by the agreement of 1935 is Delaware, and that, therefore, its law determines its validity.

Not only is it the rule that the essential validity of an *inter vivos* trust having its situs in Delaware is governed by its law,

but it is equally the rule that the validity of the exercise of a power of appointment reserved in such a trust agreement is to be determined in accordance with Delaware law. *Wilmington Trust Co. v. Wilmington Trust Co., supra; Equitable Trust Co. v. Snader,* 17 *Del.Ch.* 203, 151 *A.* 712; Land, *Trusts in the Conflict of Laws,* § 24. This is so because the appointments made by the exercise of the power are regarded in law as though they had been embodied in the original trust instrument, and as such as having been created by it. *Wilmington Trust Co. v. Wilmington Trust Co., supra.*

We, therefore, hold that the law of Delaware determines the essential validity of this trust agreement and of the exercise of the power of appointment.

We now reach the question of whether or not this particular trust instrument and the exercise of the power reserved in it are valid under Delaware law.

The Lewis Group first argues that the agreement of 1935 created no present interest in remainder, either vested or contingent, in anyone prior to the death of Mrs. Donner, and that, therefore, it was a testamentary disposition and, as such, invalid for failure to comply with the Florida statutes concerning wills. In support of the argument are cited 3 *Scott on Trusts,* § 330.4; 1 *Bogert on Trusts and Trustees,* § 103; and *Restatement, Trusts,* § 56. We recognize the rule but we think that it does not apply to the trust created by Mrs. Donner in 1935.

By that agreement Mrs. Donner reserved a life interest to herself, and directed that upon her death the corpus should be distributed as directed by the exercise of a reserved power of appointment. In the event she should die without having exercised the power it was directed that the corpus should be distributed to her then living issue, *per stirpes,* and in default of living issue, to her next of kin.

We think that a present interest in remainder came into existence with the creation of the trust in 1935. That remainder interest was lodged in Mrs. Donner's issue upon condition they survived her. By the same token, Mrs. Donner's next of kin had an interest

in remainder conditioned upon Mrs. Donner dying without leaving surviving issue. It is true that both of these remainder interests— whether vested or contingent makes no difference—were subject to defeasance by the exercise of the reserved power of appointment. That, however, does not mean that they were not present interests created in 1935. Gray, *The Rule Against Perpetuities (4th Ed.)*, § 112(3); *Restatement, Property, Future Interests,* § 157, comment R. Furthermore, the exercise of the power of appointment by Mrs. Donner by instrument in her lifetime created present interests in the beneficiaries of the appointment, and under the rule of *Wilmington Trust Co. v. Wilmington Trust Co., supra,* those interests are regarded in law as having been embodied in the agreement of 1935. Accordingly, we are of the opinion that the trust is not testamentary in character for failure to create present interests in persons other than the settlor at the time it was created.

The Lewis Group next points to certain provisions of the trust agreement and contends that the effect of them is to destroy it as an effective *inter vivos* deed of trust. These provisions are: (1) The reservation by Mrs. Donner of all of the net income from the trust for her life; (2) The reservation by Mrs. Donner of the right to amend or revoke the trust agreement in whole or in part; (3) The reservation by Mrs. Donner of the right to change the trustee under the trust; (4) The reservation by Mrs. Donner of the right to designate and to change an investment advisor to the trustee; (5) The limitation placed upon the trustee to the effect that certain powers could be exercised only with the consent of or at the direction of the trust advisor, and (6) The reservation by Mrs. Donner of the power to appoint the trust corpus either by *inter vivos* instrument in writing, or by last will and testament.

The Lewis Group contends that cumulatively the above recited provisions have the legal effect of creating an agency relationship between Mrs. Donner and Wilmington Trust Company. It is, therefore, argued that since the relationship was one of agency, the disposition of the trust corpus by Mrs. Donner through the purported exercise of her reserved power of appointment was testamentary in character,

and, as such, invalid under the law of Florida in which state she had died domiciled.

The Lewis Group cites authorities to the effect that if a settlor retains large powers of control over trust property and a power to change the ultimate beneficiaries of the trust to such an extent that the trust is made as ambulatory as a will, under some circumstances it will not be sustained as a trust, upon the theory that it is a disguised attempt by the settlor to make a revokable disposition of property to take effect after death. The question comes down to whether or not the combined effect of the reserved powers is such as to leave the settlor virtually the owner of the property and the trustee a mere agent. See *Annotation, 32 A.L.R.2d* 1270.

■■ In Delaware it has long been the law that the reservation of a life interest in trust income coupled with a power to revoke the trust and to dispose of the trust corpus by testamentary appointment will not make the trust testamentary in character. *Equitable Trust v. Paschall*, 13 *Del.Ch.* 87, 115 *A.* 356. Nor will the reservation of a power to change the trustee at the option of the settlor make it testamentary. *Wilmington Trust Co. v. Wilmington Trust Co., supra.*[6]

However, the main thrust of the argument of the Lewis Group is directed to the provisions of the agreement providing for the designation of a trust advisor and the limitations on the power of the trustee to act only with the consent of or at the direction of the advisor.

By the agreement, Mrs. Donner reserved the right to change the original advisor named and, in fact, she did so on two separate occasions. The agreement, however, specifically confines the powers

---

6. This also seems to be the law in most jurisdictions. *United Bldg. & Loan Ass'n v. Garrett*, D.C.Ark. 1946, 64 *F.Supp.* 460; *Rose v. Rose,* 300 Mich. 73, 1 *N.W.2d* 458; *Cleveland Trust Co. v. White,* 134 *OhioSt.* 1, 15 *N.E.2d* 627, 118 *A.L.R.* 475; *Pinckney v. City Bank Farmers Trust Co.,* 249 *App.Div.* 375, 292 *N.Y.S.* 835; *Stouse v. First Nat'l Bank of Ky.,* Ky., 245 *S.W.2d* 914, 32 *A.L.R.2d* 126; *Leahy v. Old Colony Trust Co.,* 326 *Mass.* 49, 93 *N.E.2d* 238, 18 *A.L.R.2d* 1006; *City Bank Farmers Trust Co. v. Charity Organization Society,* 238 *App.Div.* 720, 265 *N.Y.S.* 267; *Farkas v. Williams,* 5 *Ill.2d* 417, 125 *N.E.2d* 600; *See* 1 Scott on Trusts, § 57.1.

of the trust advisor as limitations on the exercise of the trustee's powers to (1) the power to sell trust property; (2) the power to invest the proceeds of any sale of trust property, and (3) the power to participate in any plan of merger or reorganization of any company in which trust proceeds have been invested. With respect to the exercise of all of the other specific powers granted to the trustee the consent of the trust advisor is not required.

If it be assumed that the exercise by the trustee of the above enumerated powers had been conditioned solely upon the consent of Mrs. Donner herself, it is clear that that limitation would not have made the trust testamentary in character. *Restatement of Trusts,* § 57, *Comment* g; 1 *Scott on Trusts,* § 57.2; 1 *Bogert on Trusts and Trustees,* § 104; *National Shawmut Bank of Boston v. Joy,* 315 *Mass.* 457, 53 *N.E.2d* 113. It follows logically, therefore, that if Mrs. Donner could have limited the power of the trustee to act only with her consent without making the trust testamentary, the same limitation could have been imposed by requiring the consent of a third party. In point of fact, the *National Shawmut Bank* case was precisely that situation, the power to control the investing of the trust funds having been conferred upon a third person. Furthermore, a trust advisor is a fiduciary, somewhat in the nature of a co-trustee, and is sometimes described as a quasi-trustee. *Gathright's Trustee v. Gaut,* 276 *Ky.* 562, 124 *S.W.2d* 782, 120 *A.L.R.* 1403; *Restatement of Trusts,* § 185, *Comment* c; 2 *Scott on Trusts,* § 185. The resulting situation fundamentally is not unlike the appointment of co-trustees whose joint action is required in trust matters.

The agreement of 1935 by its terms reserves no power to Mrs. Donner herself over the control or management of the trust property, except such power as may come from her right to revoke the trust, change the trustee and change the advisor to the trustee. As far as the terms of the agreement itself are concerned, the trustee and the advisor were required to use their independent judgment in reaching decisions relating to the administration of the trust.

The terms of the agreement, therefore, do not compel the conclusion that Mrs. Donner retained such a measure of control over

the management of the trust property that, as a matter of law, the Wilmington Trust Company, and the trust advisor named were actually her agents. The entire management of the trust is vested by the terms of the instrument in the trustee and the advisor. We think, therefore, that under the law of Delaware the agreement of 1935 created a valid *inter vivos* trust and not an agency relationship as the Lewis Group contends.

The Lewis Group, however, urges that the history of operation of the trust by Wilmington Trust Company indicates clearly that Wilmington Trust Company was in fact a mere agent. To support this contention, affidavits and depositions were filed upon the theory that the agreement, itself, was ambiguous, and that the history of operation of the trust would be of assistance in resolving the ambiguity.

Such extrinsic evidence is material only in the event of ambiguity in the trust instrument itself. Restatement of Trusts, § 38. In our opinion, there is no ambiguity in this agreement. On the contrary, we think its provisions are clear with respect to the acts of Wilmington Trust Company which required the consent of the trust advisor. The scheme used in drafting the agreement was to enumerate specific powers granted to Wilmington Trust Company, as trustee. It was then specifically directed that certain, but not all, of those powers should be exercised by Wilmington Trust Company only with the consent of or at the direction of the advisor of the trust. We think there is nothing ambiguous in this provision and that the requirement of consent of the trust advisor is confined to those specific powers. Consequently, we agree with the Acting Vice Chancellor that the evidence of the history of the trust administration is irrelevant.

In view, however, of the insistance of counsel upon the point, we will consider it, but we point out that in our opinion such consideration is unnecessary, and probably improper in the absence of an ambiguity in the instrument.

Generally speaking, the evidence discloses that Mrs. Donner named successively three different trust advisors, and that in administering the trust Wilmington Trust Company acted almost entirely in

accordance with the directions of the trust advisor. We will assume, as they appear to do, that the affidavits support the contention of the Lewis Group that Wilmington Trust Company in all details of trust administration accepted unhesitatingly the directions of the advisor, and in fact exercised no independent judgment.

We have no doubt, however, that the voluntary giving up by a trustee of its independent functions as trustee to an advisor named in the trust instrument cannot operate to change the fundamental nature of the relationship created by the agreement. Such a voluntary failure to act as an independent trustee in those fields in which the agreement contemplated such action may be ground at the insistence of a beneficiary to remove the trustee but, certainly, it cannot change the relationship intended to be created by the trustor.

We note, also, that none of the facts supports at all the contention that Mrs. Donner, herself, had a hand in the management of the trust or made any of the decisions with respect to the internal management of the trust. Indeed, as far as the facts indicate, she knew nothing of the manner in which Wilmington Trust Company and the trust advisor were managing the affairs of the trust.

Assuming, therefore, that the evidence was material, a conclusion we expressly disclaim, nevertheless, there is no showing that Mrs. Donner retained any practical control of the management of the trust estate to the extent that the trustee and the trust advisor were thereby created her agents, with the consequence that, in law, the agreement of 1935 and the exercise of the power of appointment created by it were testamentary in character.

Our conclusion, therefore, is that the agreement of 1935 under the law of Delaware created a valid *inter vivos* trust. Under the law of Delaware, also, we think Wilmington Trust Company was required to transfer the trust assets pursuant to the directions contained in Mrs. Donner's exercise of the power of appointment delivered to it prior to her death.

The Lewis Group cites principally in support of its argument in this respect *In re Pengelly's Estate,* 374 *Pa.* 358, 97 *A.2d* 844. The

case, however, is of little aid to them. It was a suit brought by a widow, estranged from her husband for over forty years, to set aside a purported *inter vivos* trust which excluded her from any share in the husband's assets. The purported trust agreement transferred certain securities in trust and granted the trustee the right to invest trust assets "with the approval of the settlor during his lifetime." By the agreement the settlor reserved the income for life, and disposed of the corpus after his death in a manner to exclude his widow.

The court, in its opinion, states the fact to be that the trust agreement was in effect nothing more than the continuance of an arrangement for the management of the settlor's affairs existing between the trustee and the settlor for a period of seven years prior to the execution of the agreement, and that that arrangement was one of principal and agent. Thus, Pengelly's Estate dealt with a purported trust which in reality perpetuated a previously existing principal and agent relationship. This relationship was unchanged and continued to be completely subjected to the actual directions of the settlor in its administration. As we have pointed out, in the case before us, however, Mrs. Donner exercised no actual control whatsoever. The two cases are clearly different.

We have been furnished a certified copy of the opinion of the Supreme Court of Florida in the litigation between some of the parties to this appeal. Later, we will have occasion to refer to this opinion under the point of collateral estoppel, but in connection with the question now under discussion we regard it merely as an additional authority cited by the Lewis Group.

The Florida Supreme Court held that the law of Florida governed the question of validity of the exercise of the power of appointment, because Mrs. Donner was domiciled in Florida at the time of her death. As we have pointed out, however, the domicile of a settlor is at most a minor factor to be considered in determining the situs of an *inter vivos* trust. As we read the opinion it appears to be the theory of the Florida Court that each exercise of the power of appointment was an amendment and republication of the agreement of 1935, and since no present remainder interest was created either

by the agreement, or the exercise of the power, until the death of Mrs. Donner domiciled in Florida, the validity of those remainder interests was to be tested by Florida law.

With all deference to the highest tribunal of a sister state, we disagree. Such may be the law of Florida but it is certainly not the law of Delaware. As we have pointed out, the exercise of a power of appointment creates immediate interests which in law are as though they had been written into the original instrument. The right to revoke or change the appointment has merely the effect of making the interests thereby created subject to possible defeasance. Furthermore, we think the Florida Supreme Court, in concluding that no present interests in remainder were created by the agreement of 1935, has overlooked, presumably inadvertently, the gift in remainder to Mrs. Donner's living issue, or next of kin, in default of exercise of the power.

We are also constrained to disagree with the conclusion of the Florida Supreme Court that the agreement of 1935 created an agency relationship. The decision in this respect is based, apparently, solely upon the provisions of the agreement, itself, reserving certain powers to Mrs. Donner and requiring in some instances joint action by the trustee and the advisor. As we have pointed out, the reservation of a power to revoke or appoint the corpus of an *inter vivos* trust does not transform the relationship into one of agency. Nor is there anything in the provisions relating to the trust advisor which suggests that the advisor was subject to the dictates of Mrs. Donner. Even the facts concerning the operation of the trust, which we suspect were not before the Florida court, rebut the violent presumption necessary to be made to support the conclusion reached. The opinion of the Florida Supreme Court is not persuasive as an authority.

We think our discussion of the validity of the agreement as an *inter vivos* trust is sufficient answer to other authorities relied upon by the Lewis Group in support of its contentions under this point.

The second fundamental question is what effect, if any, does the adverse judgment entered in the Florida litigation have upon the

right of the Hanson Group to litigate the question of essential validity of the trust of 1935 in Delaware.

The Florida judgment [7] is an adjudication that by reason of the probate of Mrs. Donner's will, Florida, as the state of domiciliary administration, has substantive jurisdiction to inquire into the validity of the 1935 trust and the exercise of the powers of appointment, references to which were made in the will, and to hold them invalid under Florida law.  Upon this point, the Supreme Court of Florida affirmed the trial court's ruling of invalidity.  In the cross appeal, which sought a review of the trial court's holding that Florida lacked jurisdiction over the non-appearing defendants (among which were Wilmington Trust Company, Delaware Trust Company),[8] the Florida Supreme Court reversed the trial court and held that jurisdiction over the trustee under the trust and the beneficiaries of the exercise of the power of appointment could be obtained by constructive service.

In their answer the Lewis Group pleads the Florida judgment and upon the basis of it asks for certain relief.  The first prayer for relief is that Delaware Trust Company be ordered to account for the $400,000 received by it from the trustee and be directed to transfer it to the executrix of Mrs. Donner's will.  The second prayer for relief is, in the event Delaware Trust Company not be ordered to account, that a money judgment be entered against Wilmington Trust Company in the amount of $417,000 with interest.

With respect to the second prayer for relief, it is obvious that, irrespective of the demand that Delaware Trust Company be ordered to account, the Lewis Group seeks a personal judgment against Wilmington Trust Company from the inclusion in the prayer for a judgment of $17,000, since Delaware Trust Company has never received this sum.

7. By stipulation of the parties the record has been augmented to include the Florida judgment as finally framed by the Supreme Court of Florida, to all intents and purposes as though it had been pleaded and proven in the court below.

8. The recipients of the $17,000 appointment were not even named as parties *pro forma* in the Florida action.

The Lewis Group, therefore, seeks to use the Florida judgment as the basis for an assertion of personal liability against Wilmington Trust Company, and as a judgment *in rem* dispositive of the entire trust corpus. The full faith and credit clause of Article IV of the Federal Constitution is invoked.

The demand of full faith and credit for the Florida judgment as the prop for the assertion of personal liability against Wilmington Trust Company is defeated by the fact that Wilmington Trust Company has never been served personally with Florida process, nor has it appeared in any form in the Florida litigation. The recital of these facts is sufficient to require the denial of full faith and credit to the Florida judgment when it is sought to be made the basis for the assertion of personal liability. *Iowa-Wisconsin Bridge Co. v. Phoenix Finance Corp., 2 Terry 527, 25 A.2d 383, certiorari denied,* 317 *U.S.* 671, 63 *S.Ct.* 79, 87 *L.Ed.* 539. It follows, therefore, that the prayer of the Lewis Group for a money judgment against Wilmington Trust Company was properly denied.

Next, the Lewis Group argues that the Florida judgment is entitled to full faith and credit as a judgment *in rem.* It is, of course, true and the courts of Florida may adjudicate with respect to a *res* within its boundaries and subject to its control, and full faith and credit may be successfully claimed for such a judgment in the courts of other states. *Restatement, Conflict of Laws,* § 429. But a judgment which has the force of a judgment *in rem* with respect to assets located in Florida does not acquire by reason of the full faith and credit clause any extra-territorial effect upon assets located outside of the State of Florida in the absence of seizure by the Florida courts. *Riley v. New York Trust Co.,* 315 *U.S.* 343, 62 *S.Ct.* 608, 609, 86 *L.Ed.* 885. To have any extra-territorial effect such a judgment must have been rendered after the acquisition of personal jurisdiction over the party claiming the non-Florida assets. *Baker v. Baker, Eccles & Co.,* 242 *U.S.* 394, 37 *S.Ct.* 152, 61 *L.Ed.* 386.

The *res,* over which these parties are contending, consists entirely of corporate securities which at all times since 1935 have been located

in Delaware. There has been no seizure of them by any judicial process in Florida, nor has any person or corporation holding the assets voluntarily by appearance brought them before the Florida courts.

The Supreme Court of Florida purports to find jurisdiction over this trust *res* by reason of the Florida domicile of Mrs. Donner and the probate there of her will. In an action brought to construe that will it rendered a decision "as to whether or not the instruments which created their [remainder] interests were effective to shift the trust property out of the estate of the testatrix." This was done on the theory that the last effective act of Mrs. Donner to establish remainder interests in the trust corpus, *i.e.,* the execution of the power of appointment of 1949, was performed by her while a resident of Florida and amounted to a republication of the trust of 1935; it was held that it was as if the original instrument had been executed while she was domiciled in Florida. As we have pointed out, this result is contrary to the law of Delaware, and also the recent trend of well-considered decisions in other states.

The Florida court relies upon *Henderson v. Usher,* 118 *Fla.* 688, 160 *So.* 9, but as we read that case it does not support their holding. In the *Henderson* case an action was filed for the construction of the will of a Florida decedent which purported to exercise a power of appointment over the corpus of an *inter vivos* trust created by a Florida resident in New York with a New York trustee. The donor deposited the securities comprising the trust corpus in New York, and in the instrument gave a power of appointment by will to the life beneficiary, a Florida resident. The will of the Florida donee of the power created an admittedly testamentary trust by the exercise of his power of appointment over the *inter vivos* trust corpus. Thereafter, the trustees of the testamentary trust, nonresidents of Florida, instituted suit for the construction of the Florida will so that they might be instructed as to their duties under the will and the testamentary trust.

The precise question in the *Henderson* case was the validity of constructive service upon the widow of the testator, who had remar-

ried and was a resident of New York. Constructive service upon her was upheld upon the ground that the *res* before the court was the Florida will, and the trust established by it, and since the trustees under the will had voluntarily submitted it to the courts of Florida for adjudication, jurisdiction had thereby been conferred over the testamentary trust. Furthermore, there was no question but that the Florida will had by the exercise of the power created a Florida testamentary trust. In issue was the right of the widow to receive income from the testamentary trust. There was no issue concerning the rights of anyone arising out of the New York *inter vivos* trust.

The *Henderson* case, therefore, is not authority for the assertion of jurisdiction by Florida over an *inter vivos* trust created and administered in Delaware. The will of Mrs. Donner, contrary to the apparent view of the Florida Supreme Court, did not exercise the reserved power of appointment. That power was exercised in 1949 and a part of the Delaware trust corpus was appointed to her Florida executrix and disposed of by the residuary clause of her will. With respect to this portion of the *inter vivos* trust corpus, it is clear that Florida has jurisdiction since it passes as part of Mrs. Donner's estate; but with respect to the $417,000 appointed to non-Floridians it is equally clear, not only that Mrs. Donner did not intend it to pass as part of her estate, but that Florida has never had the remotest connection with or power over it.

The Florida Supreme Court cites as further authority for its assumption of jurisdiction over the 1935 trust the case of *Swetland v. Swetland,* 105 *N.J.Eq.* 608, 149 *A.* 50, *affirmed* 107 *N.J.Eq.* 504, 153 *A.* 907. This case, however, is not authority for the assumption of jurisdiction under these circumstances. The *Swetland* case was a bill for accounting against a nonresident trustee based on the dissipation and misappropriation of the corpus of an *inter vivos* trust created and administered in New York. The complainants sought an injunction against the New Jersey executors of the creator's New Jersey will, which added a large amount to the original *inter vivos* trust corpus, from paying it over to the trustee, and sequestered the nonresident trustee's interest in the creator's New Jersey estate. Since the assets themselves were in the hands of New Jersey executors

and had by sequestration been subjected to the power of the court, it was held that irrespective of the situs of the trust the court could enforce its decree to the extent of the property sequestered. It is plain that the *Swetland* case is distinguishable.

It follows, therefore, that the Florida judgment is not entitled to full faith and credit as a judgment *in rem* as to the $417,000 which has never been subjected to the control of the Florida court and, as such, a bar to the action before us.

The Lewis Group next argues that irrespective of full faith and credit, the Florida judgment precludes the litigation of the question of essential validity of the 1935 trust as a matter of *res adjudicata* or, in the alternative, as a matter of collateral estoppel.

The doctrine of *res adjudicata* has no application in the pending action because the essence of the doctrine is that the prior judgment raised as a bar must have been rendered in a prior action between the same parties involving the same cause of action asserted in the second action. *Restatement, Judgments,* § 48 ; *Collateral Estoppel by Judgment,* 56 *Harv. L.R.* 1. It is obvious that we are dealing here with an entirely different cause of action from that tried in Florida. In Florida the issue was, what assets passed under the will of Mrs. Donner? The Florida ruling, that the exercise of the power of appointment was testamentary, was an implicit ruling of invalidity of the 1935 agreement as an *inter vivos* trust, but it was only incidental to the main issue raised in the Florida proceeding.

This fact is sufficient answer to the assertion of the defense of *res adjudicata,* but it would seem to be clear that it could not be availed of in any event because of the inherent lack of jurisdiction of the Florida courts over some of the parties to this cause and over the subject matter of this suit.

The Lewis Group argues, in the alternative, that the Hanson Group, however, are collaterally estopped by the Florida judgment from relitigating the question of essential validity of the 1935 agreement as an *inter vivos* trust. The doctrine of collateral estoppel is recognized and applied in proper cases by Delaware courts.

*Petrucci v. Landon,* 9 *Terry* 491, 107 *A.2d* 236; *Niles v. Niles,* 35 *Del. Ch.* 106, 111 *A.2d* 697.

Florida in a direct proceeding would have had no jurisdiction to determine the validity of an *inter vivos* trust whose situs was in Delaware and whose trustee was not subject to Florida process. 54 *Am.Jur., Trusts,* §§ 564, 584; *Lines v. Lines,* 142 *Pa.* 149, 21 *A.* 809. It may, however, occur that in an action in Florida over which Florida admittedly has jurisdiction it might become necessary for the Florida court to decide a question which it would have had no jurisdiction over in a direct proceeding brought for that purpose. In such event, when such question has actually been litigated and fought out by the same parties in the prior action, a collateral estoppel may sometimes be raised against such parties in a second action in which the same issue is raised. We are of the opinion, however, that no collateral estoppel arises in the pending case.

In the first place, a recognized exception to the doctrine exists when the second action is brought in a court having jurisdiction of the subject matter and parties to determine directly the issue decided only incidentally in the first action. *Restatement, Judgments,* § 71; *Collateral Estoppel by Judgment,* 56 *Harv.L.R.* 1, 22; *Annotation,* 147 *A.L.R.* 225. The action before us was brought in the Court of Chancery to determine directly the validity of the 1935 agreement as an *inter vivos* trust and that court has jurisdiction of the subject matter and the necessary parties. Since the holding of invalidity by the Florida courts was only incidental to the main issue presented to it, the case falls directly within the exception to the doctrine.

In the second place, the doctrine of collateral estoppel is applied only when the same parties in the second action have had their day in court in the first action on the issue in question. This rule is based on the consideration that the proper administration of justice will be served best by limiting parties to one trial of one issue. See *Niles v. Niles, supra.*

The Florida judgment does not meet this condition, for the Delaware trustee and the beneficiaries of the exercise of the power have never had their day in court on this issue.

It does not answer this objection to argue, as the Lewis Group does, that these parties received notice of the pendency of the Florida action and could have appeared in that forum and defended the action. To be sure, they could have done so, but they elected not to, for there was no *res* before the Florida court the seizure of which would have furnished a compulsive force for their appearance. To hold that in the absence of jurisdiction over the *res* in controversy Florida can compel appearance through substituted service would be a violation of the due process clause of the 14th Amendment. *Pennoyer v. Neff,* 95 *U.S.* 714, 24 *L.Ed.* 565.

The Lewis Group argues, however, that Wilmington Trust Company and Delaware Trust Company are bound by the Florida judgment to all intents and purposes as though they had appeared in the cause because the various beneficiaries of the trusts were subject to the jurisdiction of the Florida court.[9] The argument is that when a *cestui que trust* is bound by the judgment of a court, the trustee is likewise bound because he is in privity with the *cestui*. It is argued that these particular trustees were mere stakeholders and, as such, were unnecessary parties to the Florida action. *Thompson v. Hammond,* 1 *Edw.Ch., N.Y.,* 497, and *First National Bank of Holden-ville, Okl. v. Ickes, D.C.,* 60 *F.Supp.* 366, are cited in support of the argument. We have read these cases and are of the opinion that they do not remotely support the contention.

Furthermore, we think it the law that while a *cestui que trust* is bound in most circumstances by an adjudication against his trustee, *Iowa-Wisconsin Bridge Co. v. Phoenix Finance Corp., supra,* the converse of that proposition is not the law, particularly when the adjudication affects the existence of the trust itself. It is the duty of a trustee to defend the existence of his trust, 2 *Scott on Trusts,* § 178, even against an attempt by the settlor and sole beneficiary to overthrow it. Cf. *Weymouth v. Delaware Trust Co.,* 29 *Del.Ch.* 1, 45 *A.2d* 427. A trustee is also an indispensable party to a suit involving the trust property, and in defense of title to the trust property. 54 *Am.Jur., Trusts,* § 584.

9. No similar argument is made with respect to the recipients of the $17,000 appointment.

In view of this, it is impossible to accept on principle the argument that a judgment against a *cestui que trust* binds the non-appearing trustee. At the argument, counsel for both groups stated that they had found no authority so holding, nor have our own researches disclosed any. Upon reflection, we are not surprised that there is none, for any such rule might permit a beneficiary by shopping around among jurisdictions to defeat the trust against the manifest intent of the trustor. We, therefore, are of the opinion that the non-appearing defendants in Florida are not estopped by the judgment on the ground of privity with appearing defendants.

Finally, we think the public policy of Delaware precludes its courts from giving any effect at all to the Florida judgment of invalidity of the 1935 trust. We are dealing with a Delaware trust. The trust *res* and trustee are located in Delaware. The entire administration of the trust has been in Delaware. The attack on the validity of this trust raises a question of first impression in Delaware and one of great importance in our law of trusts. To give effect to the Florida judgment would be to permit a sister state to subject a Delaware trust and a Delaware trustee to a rule of law diametrically opposed to the Delaware law. It is our duty to apply Delaware law to controversies involving property located in Delaware, and not to relinquish that duty to the courts of a state having at best only a shadowy pretense of jurisdiction. Cf. *Taylor v. Crosson*, 11 *Del.Ch.* 145, 98 *A.* 375.

We conclude, therefore, that the agreement of 1935 between Mrs. Donner and Wilmington Trust Company created a valid *inter vivos* trust, that the exercise by Mrs. Donner of the power of appointment reserved in that agreement was effective to dispose of the trust corpus, and that the parties to this cause are not estopped by the Florida judgment from having those questions adjudicated by the Delaware Court of Chancery.

The judgment of the Court of Chancery will be affirmed.