OPINION OF THE COURT
C. Raymond Radigan, J.
This is a proceeding for a construction of article second of the codicil to decedent’s will which in effect provides that if at any time the coexecutors should disagree with respect to the administration of the estate, they are to consult with two named individuals whose directions they are to follow, provided the named advisors agree, and if they cannot, then the court is to decide the matter.
The decedent was survived by a daughter and son, each of whom is named executor. Included as assets of the decedent’s estate are five commercial properties of which the decedent and his son were equal tenants in common. Following the decedent’s death, the son requested a direction from the *304 advisors that he be given the sole right to sign checks and manage the five parcels of realty. In a somewhat lengthy document referred to as an "arbitration award”, the two advisors, one Robert S. Breitbart, the decedent’s attorney and draftsman of the will, and a Louis Brinn, a physician and apparently longtime friend of the decedent, came to the conclusion that since the son had been intimately involved in the day-to-day management of the five parcels of realty ever since they were purchased with the decedent, he was uniquely qualified to manage them for the benefit of the estate, and accordingly they granted him the right of management over the five parcels of realty. With regard to the power to sign checks, the son was given the sole right to sign "business checks”, but with regard to estate checks they determined that the Signature of both executors would be required. The closing paragraph of these directions concludes with the statement that "It is our fervent hope and desire that this brother and sister will, in the future, work in harmony and with none of the ill will that has been evidenced up to this point in time.”
It is the daughter’s position that she is entitled to an equal management and decision-making role with respect to all of the assets of the estate, including the real estate, and that the advisors proceeded with a determination without there being any specific dispute between the coexecutors as to the administration of the estate. She also claims that the attorney, Mr. Breitbart, being the attorney for her brother, is in a conflict of interest position, favoring her brother in the determination made. However, rather than seeking a review by this court of the directions given by the advisors, she has made a motion for summary judgment seeking to declare article second of the codicil, insofar as it creates advisors with directory powers, as an invalid infringement upon her authority as a coexecutor and an impermissible delegation of that authority.
The court would agree with the petitioner that ordinarily coexecutors have a joint and entire authority over all the property so that any one of them may act in the administration of the estate (Geyer v Snyder, 140 NY 394, 399; Matter of Hammer, 237 App Div 497, affd 261 NY 677; Pearse v National Lead Co., 162 App Div 766). However, it is equally true that the earliest common-law cases and texts recognize the right of a testator to limit, qualify, or condition the authority granted his fiduciary (1 Williams, Executors, at 141 [2d ed]). The appointment of an executor may be qualified by limita *305 tions as to time (when the appointment shall begin or end), or place (different executors may be appointed in different geographic areas), or subject matter (one executor may be given exclusive authority over a particular asset or group of assets).
Williams (Executors, at 143 [2d ed]) also refers to appointments of executors as being conditional and refers to the common-law writer Godolphin (The Orphan’s Legacy [2d ed]) which contains an entire chapter 2 devoted to conditional executors. In point of fact, the entire subject matter of qualified, limited or conditional executors has its foundation in the law of conditional bequests which is premised on the law that an individual may generally do what he wishes with his own assets. As Judge Cardozo stated in Oliver v Wells (254 NY 451, 459), "[t]he legacies and devises were acts of bounty merely. The testator was free to withhold them altogether, or to subject them to conditions, whether sensible or futile. The gift is to be taken as it is made or not at all.” (See also, Matter of Tourneau, 4 Misc 2d 941.)
While qualified or conditional appointments of executors may have a long history, the imposing of restrictions on executors and trustees which require them to follow the directions of third persons, sometimes referred to as advisors or directors, is a much more recent phenomenon which is not dealt with extensively by the cases. These situations raise questions by the courts among which are: what duty does the fiduciary have to follow the direction of the advisor or director; what is the status of the advisor or director; what judicial control is the advisor subject to; what responsibility does the executor or trustee have in following the directions given; and, finally, as argued here, whether this is an impermissible delegation of authority by the executor or trustee.
The answer to the initial question is that generally the fiduciary is required to follow out the directions of the advisor or director for the same reasons that the testator may impose upon gifts made by him conditions which are neither unlawful nor against public policy. One commentator in referring to advisors employs the term "Special Trustees and Directors” and urges the same reasoning in validating provisions employing advisors. "The simple explanation for the validity of the use of Special Trustees and Directors is another maxim: A grantor or testator may give his gift subject to any terms and conditions he chooses, unless the terms are contrary to public policy or some such restriction applies. Therefore, certain powers can be withheld from the Principal Trustee and dele *306 gated to others. Only one court has stated that the appointment of a Special Trustee in a case where the Special Trustee is competent is against public policy. The authors believe that this case is incorrect.” (Cohen and Frimmer, The New Breed of Quasi-Fiduciaries — Splitting Duties and Personal Liability for Wrongdoing, 6 U Miami Inst on Est Plan ¶ 72.1400.)
The court is in agreement with the above commentators that there is nothing invalid or contrary to public policy concerning such restrictions. Rather than being against public policy, such provisions designating advisors and directors to fiduciaries can serve a useful purpose in implementing estate plans selected by testators. The two commentators in the above article point out that while there is no limit to the situations where a special trustee or advisor may be used, several typical areas are particularly suited to such use. One would be where the testator divides the fiduciary functions between a primary fiduciary and an advisor on investments. Another situation would be employing a sprinkling trust where the advisor is to direct the fiduciary or trustee with regard to distributions of income and principal to the beneficiaries, and a third situation might involve the use of a surviving business partner selected to direct the fiduciary as to the management of the business asset since the surviving partner in many cases would be in the best position to make decisions regarding the business. In the present situation, the directive of the advisors in giving the son control of the five parcels of real property states as the reason that the son is "uniquely qualified to manage them in the most effective manner for the benefit of all the owners.” While this is only a motion for summary judgment, it is possible that the advisors’ decision may have been an exercise of prudent judgment under the circumstances.
Several cases and the Restatement (Second) of Trusts specifically deal with the appointment of advisors to fiduciaries. While the Restatement and the cases generally involve trustees, the same fiduciary principles should be applicable to executors. In Gathright’s Trustee v Gaut (276 Ky 562, 124 SW2d 782), the court held that an advisor to trustees may be appointed whose consent to certain acts is a prerequisite to the execution of the trust. Again the Restatement (Second) of Trusts § 185 states that where a person has power to control a trustee, the trustee is ordinarily under a duty to comply with the directions and ordinarily liable if he fails to do so.
Insofar as the status of an advisor is concerned, the courts *307 have generally considered him a fiduciary, somewhat in the nature of a cotrustee (Lewis v Hanson, 36 Del Ch 235, 128 A2d 819, affd 357 US 235, reh denied 358 US 858; Gathright’s Trustee v Gaut, supra, 124 SW2d, at 783). Another term employed is that of a quasi-trustee or special trustee (Cohan, Splitting Powers Between Fiduciaries, 8 Real Prop Prob & Tr J 588, 589-590). Since the relationship between the fiduciary and advisor is that of a cotrustee, with the advisor having the controlling power, the fiduciary is justified in complying with the directives and will not generally be held liable for any losses unless the instructions given him are improper or in violation of fiduciary duties owing to the beneficiaries.
In Matter of Sanford (149 NYS2d 500), the executors and trustees were restricted to obligations of the United States and the State of New York, but were exempt from liability for any investment or for any other action taken by them with the consent of Stephen Sanford, a beneficiary. The court held that with regard to any investment beyond those authorized, Stephen regulated the investments and the executors and trustees were automatically exempt from liability in carrying out his instructions.
The Restatement (Second) of Trusts § 185 provides that while ordinarily the fiduciary is under a duty to carry out the instructions of the advisor, if the trustee has reason to suspect the advisor is violating a fiduciary duty, the trustee is not under a duty to comply and may be liable if he does, and if the holder of the power insists upon compliance, the trustee is required to apply to the court for instructions.
An analogous situation appears in Matter of Langdon (154 Misc 252). There a corporate executor and trustee had been appointed together with a sister. The will provided that "In the event of a difference of opinion between my executors and trustees in the interpretation and carrying out of the provisions of this my Will, it is my wish and I hereby direct that the preference of my sister * * * shall prevail” (supra, at 253). There the court held that the sister was the final arbiter in the event of a difference of opinion between the two fiduciaries, and that she should file her decision in writing with the corporate fiduciary following any dispute "to the end that the trust company may be relieved from any responsibility” (supra, at 254). The court, however, did indicate that the corporate fiduciary would not be relieved from liability if fraud or gross negligence were present, and that in that event the corporate fiduciary was required to seek instructions from the *308 court (see also, Note, Directory Trusts and the Exculpatory Clause, 65 Colum L Rev 138, 147).
Naturally, should the fiduciary seek instructions from the court, the question arises as to what control, if any, the court may exercise over the advisor. In Chase Natl. Bank v Chicago Tit. & Trust Co. (246 App Div 201, affd 271 NY 602, rearg denied 271 NY 659), the trustee could allocate stock dividends pursuant to the consent of a five-person committee either to principal or income. The court held that the committee could allocate dividends either to principal or income regardless of the source, and that the court would not review the actions of the committee except perhaps upon proof of improper motive.
Again in McFerran v Paterson Natl. Bank (125 NJ Eq 456, 6 A2d 403), a brother of the income beneficiary was given the power to direct the trustee in regard to invasion of principal on behalf of the beneficiary. There the court held the refusal of the brother to authorize an invasion was not reviewable by the court absent bad faith or improper motives.
Finally, the primary argument advanced by the daughter here is that the designation of advisors is an improper delegation of her authority as an executor. Generally a fiduciary may not delegate discretionary powers (1A Nossaman & Wyatt, Trust Administration and Taxation § 27.17 [1] [2d ed rev]). However, this is to be distinguished from a situation where the fiduciary is required to act under the direction of some specified individual or agency (ibid., § 27.17 [2]). Since a testator may properly restrict the powers of his fiduciary by designating an advisor, it follows that no question of delegation arises of a power which one does not hold in the first place (Cohan, Splitting Powers Between Fiduciaries, op. cit., at 590). If a nominated fiduciary does not wish to be subject to such restrictions they need not qualify to act.
The court accordingly holds that the designation of advisors in article second of the codicil to make directives controlling the actions of the coexecutors in any disputes is a valid limitation upon the powers of such executors, and the motion for summary judgment by the petitioner declaring such conditions invalid is denied.
Insofar as the petition seeks to attack the directives made by the advisors, those allegations contain questions of fact which will require a hearing. Following the parties’ preparation for trial, a note of issue and statement of readiness should be filed.