MAXWELL GOLDHAR, CARROLL ROSENBLOOM, and UNIVERSAL
PRODUCTS COMPANY, INC.,
Appellants, Defendants below,

*vs.*

WILLIAM ROSENFELD,
Appellee, Plaintiff below.

*Supreme Court on Appeal—March 31, 1959.*

*John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, for appellants.

*Irving Morris,* of Cohen & Morris, Wilmington, and *Milton Paulson,* New York City, for appellee.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: This is a stockholder's derivative suit brought on behalf of Universal Products Company, Inc., against eight directors of former directors of Universal, alleging various breaches of fiduciary duty. Seven of the eight have appeared in the cause.

Shortly after the filing of the suit two of the defendant directors, together with Universal, filed a motion for judgment on the pleadings. After briefing and argument the Vice Chancellor denied the motion. The three defendants appeal.

The ground of defendants' motion was the alleged failure of plaintiff to join indispensable parties. (Parenthetically, we think that in form the motion should have been a motion to dismiss under Rule 12(b) (7), *Del.C.Ann.,* and we note that the concluding paragraph of the motion itself seeks a dismissal of the action.)

In order to understand the issues between the parties, we must examine the allegations of the complaint. Three causes of action are set forth.

The first charges that in May, 1956, five-year warrants for the purchase of 50,000 shares of stock at $56 a share were sold to seven of the defendant directors, "and to certain other officers of Universal," at a price of ten cents a warrant. It is alleged that the value of the

warrants was substantially in excess of this price, and that the transaction was a waste of corporate assets.

The second cause of action alleges that in April, 1956, "a group of investors", including defendants Chesler and Hutner, acquired all the stock and some notes of General Register Corporation, sold the stock and notes to a subsidiary of Universal (American Totalisator Company, Inc.) for a block of the subsidiary's stock, and then caused Universal to buy from the group this block of its subsidiary's stock and to pay the group therefor in stock of Universal. The upshot of this transaction, it is alleged, was a substantial profit—at least $500,-000—to the group of investors, including the two directors mentioned.

The third cause of action alleges that in 1956 and 1957 there were granted to various persons (not directors) and to the defendant Clare, later a director, options to purchase stock of Universal or of its subsidiary, American Totalisator Company. These options, it is charged, were given without any or without adequate consideration.

The relief sought is as follows:

As to the first cause of action, that the warrants be canceled, or, alternatively, if any warrants have been exercised, that the stock issued therefor be impressed with a trust in favor of universal.

As to the second cause of action that the shares of Universal issued to the group of the investors, or the proceeds thereof, if any shares have been sold, be impressed with a trust in favor of Universal.

As to the third cause of action, that all the options be canceled;

As to all causes of action, that the defendant directors account to Universal for losses sustained by Universal and for their profits.

Upon these allegations and prayers for relief, defendants contended before the Vice Chancellor, and contend here (1) that the plaintiff is seeking to cancel, or impress a trust upon, property of persons not joined as defendants, and no such relief can be given under *Elster v. American Airlines Inc.*, 34 *Del.Ch.* 500, 106 *A.2d* 202; (2) that even if such relief were limited to the defendant directors, no decree granting such relief could be made against them without injur-

iously affecting the rights of the absent option holders or stockholders; and (3) that in either view of the matter such absent holders are indispensable parties to the action who are not joined, and that the complaint is accordingly fatally defective.

Defendants' contention that the options of persons not in court cannot be cancelled is obviously correct. But plaintiff replies: (1) that the fact that he has asked for more relief than he is entitled to does not defeat the actions, because the relief can be appropriately limited; (2) that the interests of the non-director holders of the options and of the stock are severable from the interests of the defendant directors, and that a decree can be made against the latter without adversely affecting the rights of the former; and (3) that in any event the suit cannot be dismissed, since if no relief of cancellation or constructive trust can be given, monetary relief can be had against the appearing defendant directors, whose liability is joint and several.

The Vice Chancellor's opinion upon these issues did not definitely resolve them. As we read his opinion, he held:

(1) That it was unnecessary to consider the issue of indispensable versus necessary parties, because under Rule 21 the court should not dismiss the suit for non-joinder if presently unnamed parties can be joined;

(2) That although corporate officers and directors charged with a breach of duty to their corporations are indispensable parties to a derivative action brought on behalf of the corporation, yet it is not necessary that all wrongdoers be named when liability is joint and several;

(3) That if plaintiff has sought relief to which he is not entitled, an opportunity to amend the complaint and add or drop parties should be afforded;

(4) that, because the plaintiff's theory of his case was not clear, and because it was not clear why the provisions of 10 *Del.C.* § 365 had not been resorted to in connection with the prayers for cancellation, no action on defendant's motion would be taken until after a conference between the court and counsel as to the actual nature of the relief

sought and the status of the procedural steps taken to bring in non-residents.

The conference was held. What occurred does not appear. Thereafter the Vice Chancellor entered an order denying defendants' motion.

In the light of these facts we raised at the argument the question of our jurisdiction to entertain the appeal.

Is the order of the Vice Chancellor an appealable order under the Constitution (Art. IV, § 11, *Del.C.Ann.*) as construed in *Electrical Research Products Inc. v. Vitaphone Corporation,* 20 *Del.Ch.* 417, 171 *A.* 738; *Du Pont v. Du Pont,* 32 *Del.Ch.* 405, 82 *A.2d* 376; and *Martin v. American Potash & Chemical Corporation,* 33 *Del.Ch.* 234, 92 *A.2d* 295, 35 *A.L.R.2d* 1140?

■ It is settled by these cases, as well as others, that to be appealable the interlocutory order must be one establishing substantial legal rights. Thus, in the Du Pont case, a denial of a motion to dismiss for lack of jurisdiction of the subject matter had determined against the defendant "a substantial legal issue of the cause." 82 *A.2d* 379.

Defendants say that the Vice Chancellor's order has done just that because it has resolved against them a substantial legal question—whether the bill should be dismissed for want of indispensable parties.

Since a denial of a motion of the kind here involved may or may not settle substantial rights, we must look to the court's opinion to determine what question was settled by the order.

The substance of the Vice Chancellor's opinion is set forth above. It does not appear that he decided against the defendants the question of lack of indispensable parties. On the contrary, it appears from his opinion that after hearing argument he declined to decide it. The question of indispensable versus necessary parties is often, as the Vice Chancellor indicated, a close and difficult one. It would be quite

unreasonable to believe that, after having refused to consider the question, he concluded, without opinion, to reject defendants' contention outright. On the contrary, his opinion suggests that his denial of the motion was based on other grounds.

It is possible that he was of opinion that the motion was premature because the theory of plaintiff's case as set forth in the complaint was uncertain, and that the court needed more facts before determining the applicability of the rule of indispensable parties. (We note that it is difficult to determine from the complaint whether the second cause of action, involving a "group of investors" involves a joint contract or several contracts.)

Such a decision would not determine against the defendants any substantial legal question.

But it is uncertain upon what ground the Vice Chancellor based the denial of the motion. What is clear to us is that the court below did not resolve against defendants the disputed question of the lack of indispensable parties. Since the claim that the Vice Chancellor did so resolve it forms the whole basis of the appeal, the appeal cannot be maintained.

Both parties have presented the case to us on its merits. This is understandable, since it might serve some purpose if we could pass on the questions argued. But there are other and more important reasons against accepting the appeal. Our jurisdiction is limited by the Constitution. If we were to accept appeals in every case like this one we would end up by reviewing all interlocutory orders of the Court of Chancery whatever their nature.

For the foregoing reasons the appeal must be dismissed.