WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Will of George P. McNear, Jr., deceased (which, with J. Russel Coulter, Trustee under the Will of George P. McNear, Jr., deceased, was named as a defendant below),

Defendant below, Appellant,

<em>vs.</em>

PENNSYLVANIA COMPANY, a corporation of the Commonwealth of Pennsylvania,<br>Plaintiff below, Appellee,

and

ELIZABETH M. McNEAR, ET AL.,<br>Third Party Defendants below, Appellees.

PENNSYLVANIA COMPANY, a corporation of the Commonwealth of Pennsylvania,<br>Plaintiff below, Appellant,

<em>vs.</em>

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, and J. RUSSEL COULTER, Trustees under the Will of George P. McNear, Jr., deceased,

Defendants below, Appellees,

<em>vs.</em>

ELIZABETH M. McNEAR, JOHN W. McNEAR, ET AL.,<br>Third Party Defendants below, Appellees.

(1)

J. Russel Coulter, Trustee under the Will of George P. McNear, Jr., deceased (who, with Wilmington Trust Company, a Delaware corporation, Trustee under the Will of George P. McNear, Jr., deceased, was named as a defendant below),
Defendant below, Appellant,

*vs.*

Pennsylvania Company, a corporation of the Commonwealth of Pennsylvania,
Plaintiff below, Appellee,

and

Elizabeth M. McNear, John W. McNear, et al.,
Third Party Defendants below, Appellees.
Nos. 6, 9, 10.

*Supreme Court, On Appeal, June 13, 1961.*

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, for appellant and cross-appellee, Wilmington Trust Company.

*John J. Morris, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for appellant and cross-appellee, Pennsylvania Company.

*Samuel R. Russell,* of Morford, Young & Conaway, Wilmington, and *Philip W. Tone,* of Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., for J. Russell Coulter, appellant and cross-appellee.

*Clair John Killoran,* of Killoran & Van Brunt, Wilmington, and *Richard J. Flynn,* of Sidley, Austin, Burgess & Smith, Chicago, Ill., for Elizabeth M. McNear, et al., appellees.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: The main issue made below, and sought to be presented here, is the enforceability as a binding contract of a letter-agreement between the Pennsylvania Company and the Trustees under the Will of George P. McNear, Jr.

Because of our disposition of the appeals upon this point, a very brief statement of the facts will suffice.

Upon the death in 1947 of George P. McNear, Jr., Wilmington Trust Company and Guy A. Gladson, of Chicago, qualified as trustees of certain trusts under his will. Gladson resigned in 1956 and was succeeded by J. Russel Coulter, one of the defendants below.

Among the assets of the trust estate were 73,800 shares of stock of the Toledo, Peoria & Western Railroad Company—about 82% of the 90,000 outstanding shares.

For some time prior to April 15, 1955, the trustees had engaged in negotiations with several railroad companies looking to a sale of these shares. These efforts culminated on that date in a proposal by Pennsylvania Company (a subsidiary of the Pennsylvania Railroad) that it would buy 26% of the outstanding stock of Toledo, Peoria & Western Railroad Company, at $100 a share, and a like proposal by the Atchison, Topeka and Santa Fe Railway Company that it also would buy 26% of the stock at the same price. Each of these proposals was embodied in a letter and was accepted by the trustees.

The letter embodying Pennsylvania's offer is as follows:

"Pennsylvania Company

April 15, 1955

Wilmington Trust Company and Guy A. Gladson
Trustees under the Will of George P. McNear, Jr.
Wilmington, Del.

Gentlemen:

This letter is to confirm the understanding we have reached with you in connection with the stock of the Toledo, Peoria & Western Railroad Company.

We desire to purchase 23,400 shares of the stock representing 26% of the total outstanding, at a price of $100 per share, no commissions being involved on either side. This offer

is subject to formal approval by our Board of Directors and such approval, if any, as may be necessary from the Inter-State Commerce Commission. It is our understanding that the Company will continue to be operated as an independent organization. It is understood that all necessary details to implement this will be worked out by our respective Counsel.

If this meets with your approval, will you kindly indicate your acceptance on the attached carbon.

Very truly yours,

/s/ DAVID C. BEVAN
Vice President

Accepted

/s/ JOSEPH W. CHINN, JR.
/s/ J. SELLERS BANCROFT
    for the Trustees under Will of George P. McNear, Jr."

This document was signed and delivered at Philadelphia, Pa. Mr. Gladson, then co-trustee, gave his written approval on April 19th.

On April 27, 1955, Pennsylvania's board approved the purchase, the contract for such purchase to contain such provisions as might be approved by the officer executing it. Appropriate proceedings to obtain the approval of the Interstate Commerce Commission were authorized. Such approval was subsequently obtained (although the actual transaction approved involved all of the trust shares).

The parties undertook to agree upon a formal contract containing the provisions contemplated by the letter-proposal. Apparently they had about completed, or almost completed, the working out of such a contract, but before it was formally drafted and signed other events occurred.

On May 5th Mr. Heineman, for the Minneapolis & St. Louis Railway Company, who had previously made an offer for the Toledo, Peoria & Western Railroad Company's stock, raised his offer to about $133 a share for all of the shares in the trust.

On May 10th the attorney for Mrs. McNear, life beneficiary of the trust, protested to the Wilmington Trust Company against the sale to the Pennsylvania and Santa Fe, and on the same day some of the beneficiaries advised the trust company that they believed that no valid contract to sell the stock existed.

On May 25th and 26th the trustees notified the Pennsylvania and Santa Fe of the higher offer of Minneapolis & St. Louis Railway Company, and of the trustees' intention to accept the higher offer unless a counter-offer were made. Pennsylvania refused to increase its price, insisting it had a binding contract of purchase and sale. Santa Fe agreed to pay $135 a share for all of the shares in the trust except the 23,400 shares to be sold to Pennsylvania if the sale to that company should be enforced. A formal contract with the trustees was executed on May 26th, although its consummation awaited the Interstate Commerce Commission's approval.

In July, 1955, application was made to the Interstate Commerce Commission for its approval of the acquisition. Approval was given, appeal was taken to the courts, and the proceedings were terminated by a favorable decision of the Supreme Court of the United States in December, 1959. *Minneapolis & St. Louis R. Co. v. United States,* 361 *U.S.* 173, 80 *S.Ct.* 229, 4 *L.Ed. 2d* 223.

In January, 1960, Pennsylvania renewed its demand for performance of the letter-proposal. The trustees carried out the May 26th contract with Santa Fe, and Pennsylvania thereafter brought the present suit against the trustees. Specific performance, or alternatively, damages are sought.

The beneficiaries under the McNear Trust were brought in as third party defendants. Discovery proceedings were had.

Thereafter both sides filed motions for summary judgment, supported by affidavits. The case was heard by the Chancellor on documentary evidence, depositions, and affidavits.

The main issue before him was stated by the Chancellor as follows:

"All the defendants contend that the April 15 letter was not intended by the parties to constitute a binding agreement. They say that this is so even if the court adopts all the testimony and other matters in the record which are most favorable to plaintiff. Plaintiff in effect replies that the letter evidences an intent to be bound and thus plaintiff must succeed. Plaintiff adds that the same result follows, a fortiori, when the other evidence in the record is considered."

Before dealing with this issue, however, he considered a preliminary question, *i.e.*, whether Pennsylvania or Delaware law should be applied in determining whether the April 15th letter became an effective agreement.

He determined that Pennsylvania law governed, and that the applicable Pennsylvania statute required a preliminary determination whether the parties had intended to make a contract. That statute provides:

"Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." 12*A Pa.Stat.Ann.* § 2-204(3).

Proceeding to the main issue, he declined to pass upon it until all pertinent evidence respecting the surrounding circumstances had been developed. He therefore denied both motions for summary judgment.

The two trustees have separately appealed from his order, and Pennsylvania has filed a cross-appeal.

The parties here renew the contentions made below. (The successor-trustee adds another contention concerning the legal effect of the Santa Fe purchase upon the enforceability of the Pennsylvania agreement, but it is unnecessary to consider it.)

We take up first the Chancellor's ruling that Pennsylvania law determines the question whether a binding contract was made.

■ Delaware law holds to the doctrine that the place of making a contract determines its validity, *i.e.,* the question whether a legal obligation has been incurred. See *Harris v. New York Life Insurance Co., 27 Del.Ch.* 170, 33 *A.2d* 154, and authorities cited therein.

In 2 *Beale, Conflict of Laws,* § 332.4 the author says:

"The question whether a contract is valid, that is, whether to the agreement of the parties the law has annexed an obligation to perform its terms, can on general principles be determined by no other law than that which applies to the acts, that is, by the law of the place of contracting. If the law at that place annexes an obligation to the acts of the parties, the promisee has a legal right which no other law has power to take away except as a result of new acts which change it. If on the other hand the law of the place where the agreement is made annexes no legal obligation to it, there is no other law which has power to do so.

"So far is this the case that it is everywhere agreed that where a statute of the state where the parties contract applies to the contract, no other law whether that of the place of performance or any other, can avoid the effect of the statute."

The trustees argue that this principle is inapplicable because of the following provision in the McNear Will, relating to the trust:

"I direct further that the laws of the State of Delaware shall be controlling as to all questions pertaining to the Trusts by said Will created, * * *".

■ The Chancellor held that the provision applies to questions of the scope of trust powers, questions concerning the administration of the trust, and to like matters. We think he was clearly right. If a resident of Delaware, other than a trustee, makes a contract in Pennsylvania, the legality of that contract is surely determined by Pennsylvania law. Why should this rule not apply to trustees' contracts? No question of the Delaware rules for the administration of a trust is involved, nor does any question of local

policy arise. Moreover, we have here a Pennsylvania statute. How can the creator of a trust effectively override it.

The trustees attempt to buttress their contention by the additional argument that settlement of the transaction was to be made in Wilmington. As the Chancellor said, this argument confuses performance with validity. 2 *Beale, Conflict of Laws,* § 332.1.

We uphold the Chancellor's decision on this question.

We turn now to the main question of the binding effect of the letter-agreement of April 15th.

This question has been extensively briefed and argued. The several points made by each of the parties, and the evidence pertinent to the question of intent, are developed at length.

But we do not reach this important question. At the outset of the oral argument, we raised of our own motion a question of jurisdiction—whether the Chancellor's order denying the motions for summary judgment is an appealable one under the Constitution, in so far as concerns the issue of intention to contract, as well as the over-all issue of enforceability.

Naturally enough, counsel had not mentioned the point, and we asked them to comment upon it in their arguments. Counsel for the Wilmington Trust Company said that the order was clearly appealable, since it settled rights. Counsel for Pennsylvania Company frankly expressed doubt about appealability.

The applicable test to determine whether an interlocutory order in Chancery is appealable is whether it determines a substantial legal issue and establishes rights. *Electrical Research Products, Inc. v. Vitaphone Corporation,* 20 *Del.Ch.* 417, 171 *A.* 738. This is simple enough to state, but its application sometimes presents a close question. This is necessarily so, because appealability does not necessarily depend upon the provisions of the order itself. Thus, an order that merely denies a motion is not necessarily nonappealable. Not only the text of the order but the pleadings and issues made, and—most important—the Chancellor's opinion must be looked to to

determine the question of appealability. See *duPont v. duPont*, 32 *Del.Ch.* 405, 82 *A.2d* 376; *Martin v. American Potash & Chemical Corp.*, 33 *Del.Ch.* 234, 92 *A.2d* 295, 35 *A.L.R.2d* 1140. In the *duPont* case, the overruling of a motion to dismiss settled the question of the jurisdiction of the Court of Chancery in separate maintenance cases; in the *Martin* case an order denying injunctive relief necessarily imported a determination of a substantial and important question of corporation law.

But if it appears from the order and from the Chancellor's opinion that he merely declined, for whatever reason, to pass upon the issue tendered, the order has been held nonappealable. Our recent decisions recognize this principle. See *Goldhar v. Rosenfeld*, 38 *Del.Ch.* 233, 149 *A.2d* 753; *Healy v. Guilfuss, post* p. 26, 172 *A.2d* 574; *Fish Engineering Corporation v. Hutchinson*, 39 *Del.Ch.* 215, 162 *A.2d* 722; *Wright v. Wright*, 39 *Del.Ch.* 360, 164 *A.2d* 317, 320.

In the instant case the issue of the binding effect of the letter-agreement was clearly tendered. But it was not decided. We turn to the Chancellor's opinion.

Having determined that Pennsylvania law governed the matter, the Chancellor considered the question of the intent of the parties, as appears to be required by the Pennsylvania statute. (The trustees criticize this approach; but their criticism is not important at this stage of the case.) He concluded that doubt existed as to the intent of the parties, and that evidence would be admissible to aid in ascertaining it. He considered the provision in the resolution of Pennsylvania's board that a formal contract should be executed, and concluded that it did not effect the problem of interpreting the letter-agreement.

In this connection, it is of interest to note that the corporate trustee's motion for summary judgment was supported by an affidavit and by exhibits which on their face allege facts pertinent to the issue of interpretation. The trustee itself might thus be said to have tendered this issue.

The Chancellor also rejected the contention that, as a matter of law, there could be no adequate remedy.  In effect, he also reserved this question for future decision.  He therefore denied the trustee's motion for summary judgment.

Holding that there appeared to be material facts in issue, he also denied Pennsylvania's motion for summary judgment.  Pennsylvania does not contend that in so doing he settled against it any substantial issue of law.

We think that this refusal to dispose of the case summarily on these motions settled no substantial rights and issues of law, and that the order is therefore not appealable on the issues of intention and enforceability.

The case is quite similar to that of *Wright v. Wright, supra.* That case involved the issue of whether defendant could be compelled to borrow on a trust fund to provide support for his wife and child.  The defendant contended that as a matter of law he could not be so compelled; the Vice Chancellor ruled that plaintiff was entitled to submit evidence upon the issue, and that defendant must go to trial.  Speaking of the Vice Chancellor's opinion, we said:

> "We are of opinion that the Vice Chancellor's reference to the duPont case, and his holding that plaintiff could submit evidence with respect to the availability of the trust fund for support, did not constitute an appealable ruling.  He has as yet decided nothing with respect to the liability of the defendant in this case, so far as concerns the matter of compulsory borrowing on the remainder interest.  He has merely ruled that the defendant must go to trial and that the plaintiff is entitled to submit evidence with respect to the matter.  It will be time enough to raise this point if and when the Vice Chancellor enters an order with respect to it."

In the instant case, the Chancellor has made no decision as to the enforceability of the letter-agreement of April 15.  This is the substantial question in the case, and it has not been settled.  At the

trial it is open to the trustees to resist the claim of enforceability on any ground they see fit.

The only issue settled by the Chancellor is that of Pennsylvania law vs. Delaware law. The ruling settling that issue is appealable, and we have passed upon it.

It follows that the order of January 9, 1961, denying the motions for summary judgment is affirmed in so far as it is based on the ruling that Pennsylvania law applies to the letter-agreement. So far as the appeals attempt to present the issue of enforceability of the letter-agreement they are dismissed.