**In re the PEIERLS FAMILY INTER VIVOS TRUSTS.**

**C.M. No. 16812–N–VCL.**

Court of Chancery of Delaware.

Submitted: Oct. 25, 2012.
Decided: Dec. 10, 2012.

472

Daniel F. Hayward, Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware; for Petitioners.

## OPINION

LASTER, Vice Chancellor.

Current beneficiaries of five *inter vivos* trusts have petitioned for orders (i) approving the resignations of the individual trustees, (ii) confirming the appointment of Northern Trust Company of Delaware as the sole successor trustee for each trust, (iii) determining that Delaware law governs the administration of each trust, (iv) confirming Delaware as the situs of each trust, (v) reforming the trusts to modify their administrative provisions and create the positions of Investment Direction Adviser and Trust Protector, and (vi) accepting jurisdiction over the trusts. The petitions are denied. Jurisdiction over the trusts is not retained.

### I. FACTUAL BACKGROUND

The petitioners are Brian E. Peierls and E. Jeffrey Peierls. The four petitions concern five *inter vivos* trusts. There are two

pairs of trusts that are substantively identical, with one pair benefiting Brian and the other pair benefiting Jeffrey. A fifth trust benefits Brian, Jeffrey, and Brian's two adult sons, Stefan Peierls and Derek Peierls.

Jennie Newgass Peierls, Brian and Jeffrey's grandmother, settled the first pair of trusts under agreements dated January 14, 1953, with Bankers Trust Company, Edgar S. Peierls, and Ethel F. Peierls as initial trustees. Edgar and Ethel, presently deceased, were Brian and Jeffrey's parents. I will refer to this pair of trusts as the "1953 Trusts."

Ethel settled the second pair of trusts under agreements dated August 14, 1975, with Bankers Trust Company, Philip J. Hirsch, and Jeffrey as initial trustees. I will refer to this pair of trusts as the "1975 Trusts."

Edgar settled the final trust under agreement dated May 24, 1957, with Bankers Trust Company, Newman Pearsall, and Ethel as initial trustees. I will refer to this trust as the "1957 Trust."

Brian is the sole current beneficiary of his 1957 Trust and his 1975 Trust. Stefan and Derek are the presumptive remainder beneficiaries of both trusts.

Jeffrey is the sole current beneficiary of his 1957 Trust and his 1975 Trust. Jeffrey is not married and does not currently have children. Brian is the presumptive remainder beneficiary of Jeffrey's trusts.

Jeffrey is the sole current beneficiary of the 1953 Trust. Brian, Stefan, and Derek are the presumptive remainder and contingent remainder beneficiaries.

The current individual trustees of each trust are Jeffrey and Malcolm A. Moore, an attorney and trusted family advisor. The current corporate trustee of each trust is Bank of America, N.A., as corporate successor to U.S. Trust Company.

The petitions aver that the parties with interests in the trusts have become generally unhappy with the level of communication and responsiveness provided by Bank of America, particularly with respect to carrying out investment decisions made by the individual trustees, who comprise a majority of the trustees of each trust. The petitions seek to remove Bank of America as the corporate trustee and appoint Northern Trust as the successor corporate trustee. By titling the trust assets in the name of Northern Trust, a trust company subsidiary domiciled in Delaware, the petitions seek to change the situs of the trust to Delaware and establish that Delaware law governs the administration of the trusts. The petitions then request that the trusts be reformed to take advantage of provisions authorized by the Delaware Code.

The proposed changes will alter the structure and administrative schemes of the trusts by converting them to directed trusts. Currently, each of the trust agreements contemplates three trustees, one institutional trustee and two individual trustees. Each trustee must exercise fiduciary judgment over the administration of the trust. The proposed changes will reform each trust to have only a single institutional trustee, who will follow directions of the Investment Direction Adviser and the Trust Protector, two newly created positions. The single institutional trustee will not have significant substantive responsibility for overseeing the trust.

Jeffrey will serve initially in the newly created position of Investment Direction Adviser. According to the proposals, "[t]he Investment Direction Adviser shall hold and exercise the full power to manage the investments of the Trust. . . ." *See e.g.,* 1953 Trusts Pet. Ex. G. at 3. The proposals require that "[t]he Trustee shall follow the

direction of the Investment Direction Adviser with respect to all matters relating to the management and investment of the assets of the Trust." *Id.* at 4. The Investment Direction Adviser "may be entitled to reasonable compensation for its services as agreed upon by the Investment Direction Adviser and the Trust Protector," a second new position created by the proposed amendments. *Id.* at 9.

Moore will serve initially as Trust Protector. For as long as either Jeffrey or Brian lives, the Trust Protector will have the power to remove any trustee or appoint any successor trustee by providing notice to the trustee, the Investment Direction Adviser, and the adult income beneficiaries of the trust. After the death of the survivor of Jeffrey or Brian, the Trust Protector only will be able to remove or appoint a trustee with the written consent of a majority of the adult income beneficiaries of the trust. The Trust Protector will have the power to remove the Investment Direction Adviser and appoint any successor Investment Direction Adviser by the same mechanism, with the caveat that Brian automatically becomes the successor Investment Direction Adviser after Jeffrey. The Trust Protector also will assume primary oversight over requests from beneficiaries for distributions from the trust, which the Trust Protector will have the power to veto.

The proposed changes are designed to facilitate future changes in the language of the trust. The Trust Protector will be granted "the power to amend the administrative and technical provisions of the Trust at such times as the Trust Protector may deem appropriate for the proper administration of the Trust and for tax purposes." *See e.g.*, 1953 Trusts Pet. Ex. G. at 10. In addition, a new section will provide that "Delaware law shall govern the administration of the Trust as long as Delaware is the situs of the Trust." *Id.* at 2. In light of these provisions, the application of Delaware law to the trusts and Delaware's interest in them easily could be transitory and passing things.

The proposed changes make clear that the successor institutional trustee will not have any responsibility for or involvement in the decisions made by the Investment Direction Adviser or Trust Protector. Under the proposed changes, the trustee will have

> no duty to monitor the conduct of the Investment Direction Adviser, provide advice to the Investment Direction Adviser or consult with the Investment Direction Adviser or communicate with or warn or apprise any beneficiary or third party concerning instances in which the Trustee would or might have exercised the Trustee's own discretion in a manner different from the manner directed.

*See e.g.*, 1953 Trusts Pet. Ex. G. at 6. The trustee "shall incur no liability for any act or failure to act by the Investment Direction Adviser, or for acting on a direction of the Investment Direction Adviser or with respect to its implementation of any such direction of the Investment Direction Adviser." *Id.* The trustee also "shall not be liable for any loss resulting from action taken by the Investment Direction Adviser." *Id.* Moreover, the trustee will have "no obligation to investigate or confirm the authenticity of directions it receives or the authority of the person or persons conveying them" and is "exonerated from any and all liability in relying on any such direction from a person purporting to be the Investment Direction Adviser without further inquiry by the Trustee." *Id.* at 5. Similar provisions apply to the trustee's relationship with the Trust Protector.

The amendments will require the trust to indemnify the Investment Direction Ad-

viser, as long as either Jeffrey or Brian is serving in that capacity. The indemnification obligation will extend to "all losses, costs, damages, expenses and charges, public and private, including reasonable attorneys' fees, including those arising from all litigation, groundless or otherwise, that result from the performance or non-performance of the powers given to the Investment Direction Adviser...." *See e.g.*, 1953 Trusts Pet. Ex. G. at 7. If anyone other than Jeffrey or Brian is serving as Investment Direction Adviser, then indemnification only will be available "to the extent agreed upon by such Investment Direction Adviser, the Trustee, and those individuals with the authority to appoint Investment Direction Advisers...." *Id.* at 8. A parallel indemnification obligation will cover the Trust Protector.

## II. LEGAL ANALYSIS

The petitions seek declarations designed to cause Delaware to govern the administration of the trusts so that they can be reformed to take advantage of features authorized by the Delaware trust statute. The petitions proceed on the assumptions that if a trustee domiciled in Delaware becomes sole successor trustee and takes custody of the trust assets, then Delaware will become the situs of the trust, Delaware law will govern the administration of the trust, and reformation can proceed. The requests for orders approving the resignations of the individual trustees, confirming the appointment of Northern Trust as the successor corporate trustee for each trust, and declaring Delaware as the situs of each trust are intended to create a factual predicate for applying Delaware law. The petitions fail primarily because Delaware law does not govern the trusts. Each of the trusts affirmatively selects the governing law of a different jurisdiction.

### A. The Requests For Declarations Regarding The Trustees' Resignations And The Appointment Of A Sole Successor Trustee

Each petition seeks an order declaring that the resignations of the two individual trustees are approved. Neither individual trustee has actually resigned. Instead, each has submitted a resignation conditioned on receiving judicial approval. Each petition also seeks an order confirming the appointment of Northern Trust as successor trustee. As with the individual trustees' resignations, Northern Trust has not actually taken over as trustee but rather conditioned its acceptance of the appointment on this Court's approval.

■ With respect to the 1957 Trust and the 1953 Trusts, the requested relief cannot be granted unless the trusts are first reformed. Section 5 of the 1957 Trust and Article TENTH of the 1953 Trusts provide that there shall always be three trustees for each trust, two of whom shall always be individuals and one of whom shall always be a bank or trust company. Whether this Court can reform the trusts depends on what law governs the trusts. For the reasons discussed in later sections of this opinion, Delaware law does not govern the trusts, and it is not appropriate to reform the trusts.

■ With respect to the 1975 Trusts, there is no actual controversy for this Court to resolve. The Court's power to issue declaratory judgments like those requested in this case flows from the Delaware Declaratory Judgment Act, which states:

> Any person interested as or through an executor, administrator, trustee, guardian or fiduciary, creditor, devisee, legatee, heir, next-of-kin or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, a person

with a mental condition, may have a declaration of rights or legal relations in respect thereto:

(1) To ascertain any class of creditors, devisees, legatees, heirs, next-of-kin or others; or

(2) To direct the executors, administrators or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

(3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

10 *Del. C.* § 6504.

 To grant a declaratory judgment, a case must present an *actual controversy*. *See* 10 *Del. C.* § 6501.

(1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

*Rollins Int'l, Inc. v. Int'l Hydronics Corp.,* 303 A.2d 660, 662–63 (Del.1973). It constitutes reversible error for a trial court to have "addressed issues as to which there was no actual controversy." *Gannett Co., Inc. v. Bd. of Managers of the Del. Criminal Justice Info. Sys.,* 840 A.2d 1232, 1238 (Del.2003). Inquiry into whether an actual controversy exists is "jurisdictional in its character, and presents an issue which the court itself [is] bound to raise." *Stabler v. Ramsay,* 88 A.2d 546, 549 (Del.1952). "That all parties consented to jurisdiction is immaterial." *Id.*

Sound policy reasons underlie this careful approach:

"First, judicial resources are limited and must not be squandered on disagreements that have no significant current impact and may never ripen into legal action [appropriate for judicial resolution]. Second, to the extent that the judicial branch contributes to law creation in our legal system, it legitimately does so interstitially and because it is required to do so by reason of specific facts that necessitate a judicial judgment." Whenever a court examines a matter where facts are not fully developed, it runs the risk not only of granting an incorrect judgment, but also of taking an inappropriate or premature step in the development of the law.

*Stroud v. Milliken Enters., Inc.,* 552 A.2d 476, 480 (Del.1989) (alteration in original) (citation omitted) (quoting *Schick Inc. v. Amalgamated Clothing & Textile Workers Union,* 533 A.2d 1235, 1239 (Del.Ch.1987) (Allen, C.)). These principles apply fully to petitions seeking declarations regarding the meaning of trusts. *See Bessemer Trust Co. of Del., N.A. v. Wilson,* 2011 WL 4484557, at *5 (Del.Ch. Sept. 28, 2011) (raising *sua sponte* whether an actual controversy existed in adversarial proceeding involving a trust).

 A consent petition or similar request for judicial relief involving a trust can be appropriate in many circumstances. Recently, the Court of Chancery formally recognized the longstanding practice of hearing consent petitions by adopting Rules 100–103. A consent petition may be appropriate, for example, in cases where the trust agreement does not expressly authorize the action in question, the agreement is genuinely ambiguous, or there are minor or unborn beneficiaries whose interests must be protected through judicial oversight of the virtual representation process or, if necessary, the appointment of a guardian or attorney *ad litem*. A petition

or request for judicial relief is not appropriate when the trust agreement expressly authorizes the contemplated action. Such a request consumes judicial resources unnecessarily and does not present a live dispute capable of resolution.

Section 7(f) of the agreements governing the 1975 Trusts provides that any trustee shall have the power to resign by delivering written notice to any successor or co-trustee, with the resignation to take effect on the date specified in the notice, without necessity for prior accounting or judicial approval. Jeffrey and Moore can readily execute resignations as individual trustees of the 1975 Trusts, and they already have done so, albeit conditioned on judicial approval. In conjunction with the petitions, Jeffrey and Moore delivered their resignations to each other and Bank of America (the current co-trustees), to Northern Trust (the successor trustee), and to Stefan and Derek (the presumptive remainder beneficiaries of Brian's trusts). Section 6 of the 1975 Trusts authorizes the individual trustees of each trust to remove the corporate trustee and appoint a successor corporate trustee. Jeffrey and Moore exercised their authority, before conditionally resigning, by removing Bank of America and appointing Northern Trust. In light of the terms of the 1975 Trusts, to rule on Jeffrey and Moore's conditional resignations or Northern Trust's conditional acceptance of its appointment as trustee would constitute an impermissible advisory opinion.

The requests for declarations regarding the trustees' resignations and the appointment of a sole successor trustee are therefore denied.

## B. Whether Delaware Law Governs The Trusts

The petitions next seek orders confirming that Delaware law governs the administration of each trust. As noted, the petitions proceed on the assumption that once a Delaware corporate trustee has been appointed and the custody of the trust assets has been transferred to the Delaware corporate trustee, then Delaware law will govern administration of the trust. These requests are denied because the orders would be contrary to the choice of law provisions in the trust agreements.

### 1. Choice Of Law Principles For Multistate Trusts

"In a multistate trust proceeding the forum court must first apply its own law to determine the local law of the state to be applied in determining the substantive issue." George Gleason Bogert, et al., *The Law Of Trusts And Trustees* § 294 [hereinafter Bogert]. "The forum court's rules do not themselves determine the rights and liabilities of the parties, but rather guide decision as to which local law will be applied to determine these rights and duties." *Id.* (internal quotation marks omitted).

To resolve choice of law issues, Delaware follows the Restatement (Second) of Conflict of Laws. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 457 (Del.2010); *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del.1991). Section 6 of the Restatement explains that in the first instance, "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) of Conflict of Laws § 6 (1971) (the "Restatement"). In light of the constitutional obligation to show comity to other co-equal state sovereigns, "[a] court may not apply the local law of its own state to determine a particular issue unless such application of this law would be reasonable in the light of the relationship of the state and of other

states to the person, thing or occurrence involved." *Id.* § 9.

■ If there is no controlling statutory directive, a court faced with a choice of law issue should consider

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement § 6. In addition to these general guidelines, the Restatement provides specific principles for particular choice of law problems. For trusts, the Restatement provides different guidance depending on (i) whether the trust is a testamentary, *inter vivos,* or charitable trust, (ii) whether the trust holds real estate (described in the Restatement as "immovables") or personal property (described by the Restatement as "movables"), and (iii) whether the choice of law issue concerns the validity, construction, or administration of the trust. *See generally* Restatement §§ 267–82. All of the trusts at issue are *inter vivos* trusts that hold cash and marketable securities. The petitions recite that the trusts also hold certain unidentified real estate, but the account statements show only shares in publicly traded real estate investment trusts. This decision assumes that the trusts do not own any real estate directly.

Section 272 of the Restatement summarizes the common law rules for determining the law that governs the administration of an *inter vivos* trust where the corpus consists of personal property and not real estate. As with trust law in general, the rules begin with the settlor's intent: If the trust instrument selects a particular law to govern the trust's administration, then that selection controls. Even without an explicit designation, it may "otherwise be apparent from the language of the trust instrument or from other circumstances, such as the extent of the contacts with a particular state, that the settlor wished to have the local law of a particular state govern the administration of the trust." Restatement § 272 cmt. c. If the settlor's intent is apparent, then the settlor's choice again controls.

## 2. Applying Delaware's Choice Of Law Rules Within The Restatement Framework

■ Under the Restatement, the choice of law analysis begins with the forum state's relevant choice of law statute, if any. The Delaware General Assembly has adopted Section 3332(b) of Title 12 which states, in pertinent part, that "[e]xcept as otherwise expressly provided by the terms of a governing instrument or by court order, the laws of this State shall govern the administration of a trust while the trust is administered in this State." 12 *Del. C.* § 3332(b). Under the petitioners' theory, Northern Trust will administer the trusts in Delaware, satisfying the statute and causing Delaware law to apply. But the statute does not dispose of the choice of law issues in this case.

First, Section 3332(b) is not dispositive because it contemplates that a trust agreement may contain a choice of law provision specifying that a particular law will govern. Delaware respects freedom of contract. The trusts in this case contain choice of law provisions, and the Court must interpret them to determine whether administration falls within their scope.

Second, Section 3332(b) is not dispositive because it contemplates the possibility of a determination "by court order" that the law of a different state would govern, notwithstanding that a trust may be "administered in this State." Section 3332(b) thus establishes a default rule, while recognizing that some cases may result in a different state's law governing pursuant to a court order. Section 3332(b) does not dictate the outcome of a petition *seeking* a "court order," such as the petitions in this case.

Third, Section 3332(b) is not dispositive because the trusts in this case are not currently being "administered in this State." The petitions seek this Court's approval of the appointment of Northern Trust as successor trustee, and Northern Trust has conditioned its acceptance of the role of successor trustee on an order of this Court. At present, therefore, the trusts are not yet being administered in Delaware.

Fourth, to the extent that Northern Trust were to become successor trustee in conjunction with and conditioned upon the simultaneous reformation of the trust agreements in the manner sought by the petitions, it is far from clear that the limited functions that Northern Trust will perform would satisfy the statutory requirement that the trust be "administered in this State." For the application of Delaware law to be "reasonable in the light of the relationship of the state and of other states to the person, thing or occurrence involved," Restatement § 9, the term "administration" must have meaningful content. For Delaware law to apply to the exclusion of other sovereigns, the scope of the administration in this State must be sufficiently substantial so that the trust is *principally* administered in this State. Otherwise, Delaware cannot claim a greater interest than other states in the admin-istration of the trust, and Delaware would not have grounds to trump the jurisdiction of its sister states or authority to implement its own public policies and regulatory regime to the exclusion of those of its sister states. *See* Ch. Ct. R. 100(d)(4) ("the trust petition shall explain why Delaware is the principal place of trust administration"); *see also* Unif. Trust Code § 107 cmt. (2000) (noting that if the trust agreement does not select a governing law, "[u]sually, the law of the trust's principal place of administration will govern administrative matters"); *id.* § 202 (providing that trustees and beneficiaries consent to suit in principal place of administration).

If reformed as proposed in the petitions, the powers, responsibilities, and functions of Northern Trust will bear little resemblance to those of a traditional trustee. Responsibility for substantive decision-making will be stripped from Northern Trust and vested in the Investment Direction Adviser and Trust Protector, who will not live, work, or make trust-related decisions in Delaware. Northern Trust simultaneously will be divested of any obligation to investigate instructions provided by the Investment Direction Adviser or Trust Protector or even confirm their authenticity. Northern Trust will have no obligation to monitor the conduct of, provide advice to, or consult with the Investment Direction Adviser or Trust Protector. Northern Trust also will have no obligation to communicate, warn, or apprise any beneficiary of Northern Trust's views about any action taken by the Investment Direction Adviser or Trust Protector. It remains possible that a further and more detailed showing could be made, but based on the current record, the proposed allocation of powers, responsibilities, and functions among Northern Trust, the Investment Direction Adviser, and the Trust Protector raises serious questions about

whether the trusts would be principally administered in Delaware.

Because Section 3332(b) is not dispositive, common law principles apply. The leading Delaware Supreme Court choice of law decisions are fully consistent with the Restatement and establish that the touchstone for choice of law analysis is the settlor's intent.

In the first decision, *Wilmington Trust Co. v. Wilmington Trust Co.*, 24 A.2d 309 (Del.1942), the Delaware Supreme Court stated:

> Contracting parties, within definite limits, have some right of choice in the selection of the jurisdiction under whose law their contract is to be governed. *And where the donor in a trust agreement has expressed his desire, or if it pleases, his intent to have his trust controlled by the law of a certain state, there seems to be no good reason why his intent should not be respected by the courts,* if the selected jurisdiction has a material connection with the transaction. More frequently, perhaps, the trust instrument contains no expression of choice of jurisdiction; but, again, *there is no sufficient reason why the donor's choice should be disregarded if his intention in this respect can be ascertained from an examination of attendant facts and circumstances,* provided that the same substantial connection between the transaction and the intended jurisdiction shall be found to exist.

*Id.* at 313 (emphases added). In this passage, the Delaware Supreme Court was considering the choice of law principles for determining the law that governs the validity of a trust, with the requirement that a settlor select the law of a state with a "material connection" to the trust. *Id.* Subject to this condition, the Delaware Supreme Court held squarely that the choice of law inquiry focuses on the settlor's intent. The Delaware Supreme Court's directive to give primacy to the settlor's intent applies all the more clearly to the selection of the law that governs trust administration, where a settlor can select the law of any jurisdiction, even one with no connection to the trust. *See* Restatement § 272 cmt. c.

In a second Delaware Supreme Court decision, *Wilmington Trust Co. v. Pennsylvania Co.*, 172 A.2d 63 (Del.1961), the high court made clear that a choice of law provision in a trust instrument can speak generally and need not use the magic word "administration" to designate the law of a particular jurisdiction. In *Wilmington Trust Co. v. Pennsylvania Co.*, a provision in a will that created a testamentary trust stated: "I direct further that the laws of the State of Delaware shall be controlling as to all questions pertaining to the Trusts by said Will created...." *Id.* at 67. The Delaware Supreme Court remarked as follows: "The Chancellor held that the provision applies to questions of the scope of trust powers, questions concerning the administration of the trust, and to like matters. We think he was clearly right." *Id.* Because of the strong public policies that govern probate and decedents' estates, a testator generally has less freedom to select the governing law for a testamentary trust than the settlor of an *inter vivos* trust. *See* Restatement § 272 cmt. c. The high court's holding that the quoted language was adequate in the context of a testamentary trust, a more restrictive setting, strongly indicates that that the same or similar language is sufficient to demonstrate a settlor's intent to select the law that would govern the administration of an *inter vivos* trust, which is a less restrictive setting.

A third decision, *Lewis v. Hanson*, 128 A.2d 819 (Del.1957), illustrates how a settlor may implicitly designate the law of a

particular jurisdiction. In *Lewis,* a Pennsylvania resident settled an *inter vivos* trust under an agreement with Wilmington Trust Company, a Delaware institutional trustee. The trust agreement was signed in Delaware, and the trust assets were delivered to Wilmington Trust in Delaware. The agreement directed Wilmington Trust to invest and manage the trust assets and pay the income to the settlor during her lifetime. Wilmington Trust was given "in substance ... the ordinary powers granted to a trustee," but only could exercise three specific powers at the direction of an investment advisor: (i) the power to sell trust assets, (ii) the power to invest the proceeds from the sale of trust assets, and (iii) the power to participate in mergers or consolidations of corporations whose securities were owned by the trust. *Id.* at 824.

The Delaware Supreme Court observed that "[g]enerally speaking, a creator of an *inter vivos* trust has some right of choice in the selection of the jurisdiction, the law of which will govern the administration of the trust." *Id.* at 826. The trust in *Lewis* did not expressly select a law to govern trust administration. The Delaware Supreme Court noted that the trust agreement was "signed and the securities [were] delivered to a trustee doing business in Delaware" and concluded that "this circumstance clearly indicates the intent of [the settlor] to have the trust administered and governed according to the law of Delaware." *Id.* Delaware law therefore governed both the administration and validity of the trust. *Id.* In reaching this conclusion, the *Lewis* court followed the rule announced in *Wilmington Trust Co. v. Wilmington Trust Co.,* where the high court held that "[w]hether [the] choice of jurisdiction has been affirmatively stated ... or whether the donor's intention is deducible from surrounding facts and circumstances, is a question of evidence and

consequent proof; and in what manner the donor's intention is made to appear ought not to affect the result." 24 A.2d at 313. The Supreme Court's approach in *Lewis* also accords with the Restatement, which recognizes that "[d]espite the absence of an express designation, it may otherwise be apparent from the language of the trust instrument or from other circumstances...." Restatement § 272 cmt. c.

■ The Delaware Supreme Court decisions giving broad effect to the settlor's intent in selecting the law to govern a trust comport with Delaware's general approach to choice of law provisions. "Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship." *Abry P'rs V, L.P. v. F & W Acq., LLC,* 891 A.2d 1032, 1048 (Del.Ch.2008).

> Our state obviously relies upon the willingness of other state courts to honor the choice of law reflected in the corporate charters of Delaware firms, even when the parties before them are not geographically situated in Delaware. When the fact of Delaware incorporation has no bearing on the parties' relationship, and they have agreed to a broad choice of law provision that logically governs the claims brought before a Delaware court and that selects another state's law to govern, that choice of law provision must and should be respected by our judiciary.

*Weil v. Morgan Stanley DW Inc.,* 877 A.2d 1024, 1035 (Del.Ch.2005). Outside of the trust context, this Court has cautioned that the text of a choice of law provision "should not be interpreted in a crabbed way that creates a ... senseless bifurcation" of the law that governs different issues. *Id.* at 1032. When the drafter of an agreement selects a law to govern the

agreement and the relationship it creates, the logical conclusion is that the drafter intended that law to apply to all aspects of the agreement and relationship, unless the provision specifically states otherwise. *See id.* at 1033. For example, a broad choice of law provision that encompasses all matters arising out of or relating to an agreement extends to tort claims, such as challenges to the agreement based on misrepresentation, duress, undue influence, or mistake. *Abry P'rs*, 891 A.2d at 1048. To presume that a choice of law provision applies only to one aspect of the relationship "would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid." *Id.* (footnote omitted).

 These sensible principles apply equally to trusts. When a settlor includes a broad choice of law provision in a trust agreement that logically governs the issues brought before a Delaware court, and it provides for another state's law to govern, the provision should and will be respected. A broad choice of law provision should not be interpreted in a crabbed way that results in a senseless multiplication of the jurisdictions whose law governs different aspects of the trust.

### 3. The Effect Of Changing The Place Of Trust Administration

Determining whether the settlor intended for a single law to govern the administration of a trust can be more complicated if the trust agreement permits a transfer of situs and the appointment of a successor trustee.

> If the actual place of administration is changed, either because the trustee acquires a place of business or domicil in another state, or if in the exercise of a power of appointment a trustee is appointed whose place of business or domicil is in another state, the question

arises whether thereafter the administration of the trust is governed by the local law of the other state.

Restatement § 272 cmt. e; *see also* Daniel M. Schuyler, *Creating A Revocable Trust: Some Conflict of Laws Problems*, 1 Real Prop. Prob. & Tr. J. 363, 372 (1966) ("A change in the place of administration ... may raise an issue as to whether the law applicable to the administration of the trust is also to change.").

 Moving the situs or place of administration of a trust from one state to another does *not* automatically result in a change in the law that applies; whether the governing law changes depends on the terms of the trust. *See* Richard W. Nenno, *The Trust from Hell: Can It Be Moved to A Celestial Jurisdiction?*, 22 Prob. & Prop. 60, 61 (May/June 2008); Schuyler, *supra*, at 372; *accord* Restatement § 272 cmt. e (discussing how the terms of the trust dictate whether the governing law over administration will change). If the settlor has selected a particular law to govern administration, explicitly or implicitly, then that law will continue to govern:

> [I]n a private trust where the settlor has indicated an intent that it should be administered in a certain jurisdiction, it seems both proper and convenient that the law of that jurisdiction should govern questions of administration. When the place of administration has been fixed, a subsequent change of residence by the trustee does not alter the controlling law.

David F. Cavers, *Trusts Inter Vivos and the Conflict of Laws*, 44 Harv. L.Rev. 161, 163 n.10 (1930) (citations omitted); *accord* Nenno, *supra*, at 61; *cf.* Unif. Trust Code § 107(1) (2000). By contrast, if the settlor has not selected a particular law to govern the trust, then

> [a] simple power to appoint a successor trustee may be construed to include a

power to appoint a trust company or individual in another state. In such cases, the law governing the administration of the trust thereafter is the local law of the other state and not the local law of the state of original administration.

Restatement § 272 cmt. e.

 Consistent with the Restatement, Delaware gives broad effect to the settlor's intent to select a single law to govern a trust. *See* Part II.B.2, *supra.* Where a settlor chooses a governing law, that choice is dispositive. The settlor need not deploy talismanic language in a choice of law provision or specify a litany of trust issues to be governed by the chosen law. The settlor's intent to chose a particular law may be implied from the trust document as a whole. When a settlor has selected a governing law, the power to appoint a successor trustee in and of itself is insufficient to override this intent, unless the trust document as construed by the Court expressly provides for such a change. These principles can be seen operating in the leading cases of *Wilmington Trust Co. v. Wilmington Trust Co.,* 24 A.2d 309 (Del.1942) [hereinafter *Wilmington Trust III* ], *Wilmington Trust Co. v. Sloane,* 54 A.2d 544 (Del.Ch.1947), and *Annan v. Wilmington Trust Co.,* 559 A.2d 1289 (Del.1989).

In *Wilmington Trust III,* the Delaware Supreme Court construed a power to appoint a successor trustee as authorizing both a change in situs and the law governing administration. The trust did not contain a choice of law provision. Instead, the Delaware Supreme Court readily concluded that the trust initially was formed under and governed by the law of New York, noting that "every operative factor pointed solely to that State." 24 A.2d at 313. The high court determined, however, that a power of appointment in the trust instru-

ment contemplated that the law governing administration would change. In reaching this conclusion, the Delaware Supreme Court relied on express language in the trust instrument. Without the express language, a different rule would have applied, and the case would have come out differently.

In *Wilmington Trust III,* the Delaware Supreme Court reviewed two successive trial court decisions in which the then-sitting Chancellor and his predecessor reached opposite conclusions. In the first decision, Chancellor Josiah O. Wolcott held that New York law continued to govern the trust even after the change in situs, following the general rule that "[a] change of domicile by the trustee which is accompanied by a change of the location of the trust property itself does not change the status of the trust." *Wilmington Trust Co. v. Wilmington Trust Co.,* 186 A. 903, 909 (Del.Ch.1936) [hereinafter *Wilmington Trust I* ]. As Chancellor Wolcott saw the matter,

> Had the original trustee removed to Delaware bringing the trust res with her and there continued to administer the trust, it can hardly be denied that the New York law would have continued to govern its terms. In substance all we have here is the appointment of a new trustee by the beneficiaries with the approval of the living settlor and a removal of the trustee to Delaware with like approval. It is difficult to see anything in that fact which looks to a fundamental change in the terms and conditions of the trust.

*Id.*

Chancellor Wolcott next considered whether the explicit language of the trust instrument required a contrary conclusion. The trust agreement stated that "the successor trustee shall hold the said trust estate subject to all the conditions herein,

*to the same effect as though named herein."* *Id.* I will refer to this language as the "Same Effect Provision."

Chancellor Wolcott held that the Same Effect Provision referred "to the conditions as stated and existing at the time the trust was created" and did not imply that the settlor intended for the law governing administration to change if a successor trustee in a different jurisdiction was appointed. *Id.* In his view, under a contrary interpretation,

> if later the person of the trustee should be changed to successive trust companies located in several states respectively, the terms of the trust would vary with the migration of its administration according as the law of the state for the time being provided. The possibility of this situation is the less likely of acceptance as having been intended by the [settlor] when it is remembered that, though his assent to a change of the trustee to a trust company of any other state was necessary while he lived, after his death the adult beneficiaries were fully empowered to make the change in their absolute discretion. . . .
>
> It is hardly to be thought that the [settlor] intended consequences of so fundamental a character to flow from the mere circumstance that he provided that . . . a trust company in any state of the Union could be chosen [as successor trustee].

*Id.* at 909–10.

After issuing his decision in *Wilmington Trust I,* but before a final decree was entered, Chancellor Wolcott passed away. The pleadings were amended and presented for further decision to his successor, Chancellor William W. Harrington, who took a different view of the case. *See Wilmington Trust Co. v. Wilmington Trust Co.,* 15 A.2d 153 (Del.Ch.1940) [hereinafter *Wilmington Trust II* ]. Chancellor Harrington agreed with Chancellor Wolcott about the general rule: "After a trust has been set up in one State, the mere removal of the trustee to another State, though he takes the trust assets with him, will not alter its original location, or the law governing its interpretation and administration." *Id.* at 161. Chancellor Harrington also agreed with Chancellor Wolcott that when a settlor specifies a law to govern the trust, his intent controls. *See id.* at 162 ("[T]he late Chancellor adopted the so-called intent rule, and I am likewise in accord with that conclusion."). Chancellor Harrington disagreed only "in applying [the intent] rule to the facts." *Id.* In Chancellor Harrington's opinion, the plain language of the Same Effect Provision established that the settlor intended for the law governing the trust to change with a change in situs, because the language stated that the new trustee would hold the property "to the same effect as though now named herein," *viz.* as if the successor trustee had been appointed as the original trustee. *Id.* at 163, 168.

On appeal, the Delaware Supreme Court agreed with the general principles of trust law as articulated by both Chancellor Wolcott and Chancellor Harrington, noting that "[t]here was no disagreement in the Court below with respect to the general rules to be applied in ascertaining the situs of an *inter vivos* trust of personalty." 24 A.2d at 313. The Delaware Supreme Court then focused on which of the trial court decisions interpreted the Same Effect Provision correctly. *Id.* The Delaware Supreme Court held that Chancellor Wolcott erred because his analysis adhered to the general rule and "treated [the Same Effect Provision], virtually, as a redundancy." *Id.* at 314. The Delaware Supreme Court agreed with Chancellor Harrington's interpretation and read the Same Effect Provision to have "very plainly declared

that if the trustee should be changed ... the successor trustee should have the same status, and should be considered in all respects, as an original appointee." *Id.* This in turn meant if the successor trustee were a Delaware trustee and the trust corpus moved to Delaware, then the Same Effect Provision called for the application of Delaware law, just as if the trust originally had been created with a Delaware trustee and a trust corpus located in Delaware. *Id.* Without the Same Effect Provision, however, it appears that both *Wilmington Trust II* and *Wilmington Trust III* would have adhered to the general principles that Chancellor Wolcott articulated and the result he reached in *Wilmington Trust I.*

Consistent with the *Wilmington Trust* trilogy, the Court of Chancery subsequently held in *Wilmington Trust Co. v. Sloane* that an *inter vivos* trust permitted a change in the law governing administration because the trust expressly provided for creation of a new trust. *Sloane,* 54 A.2d at 550. The Court initially inferred that the settlor intended to create an *inter vivos* trust governed by New York law. *Id.* at 549. In the trust terms, the settlor gave the beneficiary a "general testamentary power of appointment over the fund," *id.,* in other words, permission to establish an entirely new trust. Once the power of appointment was exercised to create a new trust with a Delaware trustee, Delaware law governed the administration of the new trust. *Id.* In so holding, the Court followed an established rule:

> The power of appointment ... had its origin in the donor's deed of trust; the provisions of the deed of appointment are viewed in law *as though they had been embodied in that instrument;* and the rights and interests appointed to the children are regarded *as creations of the trust deed.*

*Id.* at 550 (emphases added) (internal quotation marks omitted). In the same case, the Court held that a testamentary trust, established under the laws of New Jersey, would remain governed by New Jersey law despite the appointment of a successor trustee located in Delaware. *See Sloane,* 54 A.2d at 550 (applying New Jersey law to determine whether a fund "subject to a general testamentary power of appointment may also be appointed in trust"). Because all that had occurred was the appointment of a successor trustee—and not the creation of a new trust—New Jersey law continued to apply. *Id.*

Most recently, in *Annan v. Wilmington Trust Co.,* the Delaware Supreme Court affirmed this Court's reliance on an explicit choice of law provision. One of the trusts at issue in *Annan* was created in Quebec, initially administered in Quebec, and provided that Quebec law would govern. Although the trust subsequently was moved to Delaware and administered by a Delaware trustee, the Delaware Supreme Court held that "the Vice Chancellor correctly upheld the choice of law provision." 559 A.2d at 1293.

These decisions comport with the choice of law analysis outlined in the Restatement. Where a choice of law provision is broad enough to cover administration, the settlor's selection is dispositive. Even where a choice of law provision does not expressly mention administration, the settlor's intent may "otherwise be apparent from the language of the trust instrument or from other circumstances." Restatement § 272 cmt. c. The combination of the appointment of a successor trustee located in a different jurisdiction and a change in situs is not sufficient to override the settlor's choice of law. The appointment of a successor trustee combined with a change in situs will change the law governing administration only if the trust document so

provides or can be construed to contemplate such a change.

### 4. Application To The 1953, 1957, And 1975 Trusts

■ The 1953 Trusts explicitly designate the law that will govern trust administration. Article THIRTEENTH of the agreements governing the 1953 Trusts states: "This trust has been created by the Settlor and accepted by the Trustees in the State of New York, and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of the State of New York." New York law therefore governs the administration of the trust.

■ The petition avers that the 1953 Trusts have been administered for several years under Texas law by U.S. Trust. This fact does not change the controlling law. A trustee's erroneous belief about the law that governs administration cannot trump the settlor's intent. Changing the place of administration, without more, will not alter a controlling designation of law. *See Annan*, 559 A.2d at 1293–94; *Wilmington Trust III*, 24 A.2d at 314; *Sloane*, 54 A.2d at 550.

The 1975 Trusts contain a broad choice of law provision selecting New York law. Section 8(b) of the 1975 Trusts states: "This Agreement shall be governed by and its validity, effect and interpretation determined by the laws of the State of New York." Although Section 8(b) of the 1975 Trusts does not use the word "administration" explicitly, it refers to the "effect and interpretation" of the agreement. Under the Delaware Supreme Court's decision in *Wilmington Trust Co. v. Pennsylvania Co.*, this language is broad enough to apply to "questions concerning the administration of the trust, and to like matters." 172 A.2d at 67.

Reading the agreements governing the 1975 Trusts as a whole confirms the selection of New York law to govern the administration of the trust. *See Dutra de Amorim v. Norment*, 460 A.2d 511, 514 (Del. 1983) (determining intent of settlor "by considering the language of the instrument, read as an entirety, in light of the circumstances surrounding its creation"); *accord Annan*, 559 A.2d at 1292 (quoting *Dutra de Amorim* ).

> Matters of administration are normally thought to include matters relating to trust management, such as the powers and duties of a trustee, the investments he may make, his right to compensation or indemnity and the liabilities to which he may be subjected for breach of trust. Matters seemingly somewhat more substantive, such as the right of beneficiaries to terminate a trust and the effect of spendthrift provisions, are, at least in a sense, also regarded as administrative in character.

Schuyler, *supra*, at 370.[1]

The agreement governing the 1975 Trusts contains numerous provisions ad-

---

1. *Accord* Bogert, *supra*, § 293; *see* Restatement § 272 cmt. c. (including matters such as "what compensation should be paid to the trustee, what investments he may properly make, what powers are conferred and what duties are imposed upon the trustee"); *id.* § 268 cmt. d (citing as "administration" such matters as "those involving the powers and duties of the trustee in general, and in particular the investments he may properly make; the compensation to which he is entitled; his right to indemnity ...; the liabilities for breach of trust which may be incurred ... and the power of the beneficiaries to terminate the trust"); *see also* Nenno, *supra*, at 61 ("Questions of trust 'administration' involve matters such as the powers and duties of the trustee, trust investments, compensation of the trustee and its right to indemnity, liability for breach of trust, and the power of the beneficiaries to terminate the trust."); Cavers, *supra*, at 164 ("Clearly matters concern-

dressing aspects of trust administration, including but not limited to:

- The duty of the trustee to invest and reinvest the principal of the trusts and circumstances when the trust should be divided or subdivided (§ 2);
- Circumstances under which the trustee can terminate the trust early (§ 5);
- The selection of trustees, including the designation of successor trustees, the removal and appointment of a corporate trustee, and the filling of vacancies (§ 6);
- Whether a trustee must post bond or other security (§ 6);
- The trustees' discretionary powers (§ 7); and
- The trustees' ability to exercise their powers to administer and make distributions from the trust corpus after termination (§ 8(a)).

The settlor also chose a New York institution as the initial institutional trustee. *Accord Walton v. Harris*, 38 Mass.App.Ct. 252, 647 N.E.2d 65, 68 (1995) ("[A]n institutional trustee 'is relatively likely to remain domiciled in the same forum over the entire period of the trust's existence. By choosing such an institution as trustee, the settlor has impliedly chosen a state of administration.'") (quoting *Norton v. Bridges*, 712 F.2d 1156, 1161 (7th Cir. 1983)); *see also* Andreas F. Lowenfeld, *"Tempora Mutantur ..."—Wills and Trusts in the Conflicts Restatement*, 72 Colum. L.Rev. 382, 387–88 (1972).

By specifying that New York law will govern the "effect and interpretation" of the trust agreement, by including numerous provisions that address the administration of the trust, and by selecting a New York institution as the initial institutional trustee, the settlor expressly chose New York law to govern trust administration. Although the agreement governing the 1975 Trusts authorizes the appointment of successor trustees, it does not contain language similar to the Same Effect Provision interpreted in *Wilmington Trust III* that could be construed as causing the governing law to change with the appointment of a successor trustee in a different jurisdiction. The settlor chose New York law to govern the administration of the trust, and that choice must be respected.

■■■ The 1957 Trust contains a choice of law provision selecting New Jersey law that uses language comparable to Section 8(b) of the 1975 Trusts. Section 7(h) states: "This Indenture shall be construed and regulated, and its validity and effect determined by the laws of the State of New Jersey." This paragraph does not use the word "administration" explicitly, but requires that the trust be "regulated" under New Jersey law. As with the 1975 Trusts, numerous provisions of the 1957 Trust address matters of administration, which thus must be "regulated" under New Jersey law. Moreover, when the trust agreement is read as a whole, it is clear that the settlor expressly chose New Jersey law to govern the administration of the 1957 Trust.

The petition avers that the 1957 Trust has been administered in accordance with New York law ever since Bankers Trust Company was directed to turn over the trust property to U.S. Trust Company of New York by order dated March 16, 2001, issued by the Superior Court of New Jersey, Chancery Division: Essex County Probate Part. The order does not say anything about changing the law governing the administration of the trust. As with

---

ing the conduct of the trustee, his powers and duties with regard to the corpus of the trust, and his liability to account, may be relegated to administration. So, too, may the often litigated problem of division of extraordinary acquisitions between income and capital.").

the 1953 Trusts, the settlor's intent continues to control notwithstanding the current erroneous application of another state's law. New Jersey law continues to govern.

When the settlor or grantor has selected a law to govern a trust, Delaware will enforce that choice. The 1953 Trusts and the 1975 Trusts provide for the application of New York law, and the 1957 Trust provides for the application of New Jersey law. Those designations are controlling, even if a Delaware successor trustee is appointed or the situs of the trust shifts to Delaware.

## C. The Confirmation Of Delaware As The Situs Of The Trusts

The petitions also seek orders confirming Delaware as the situs of the trusts. In order to change the situs of a trust, whether by expressly modifying the trust or by appointing a successor trustee in another jurisdiction, the law of the state which presently governs administration of the trust must be followed. *See* Restatement § 272 cmt. e. As explained in the preceding section, New York law governs the administration of the 1953 Trusts and the 1975 Trusts, and New Jersey law governs the administration of the 1957 Trust. The petitions do not address the parameters of New York law or New Jersey law, and the issues have not been briefed.

Equally important, it is not clear factually where trust administration principally is taking place. Although Northern Trust is a Delaware entity and apparently does some unspecified trust business in Delaware, the individual trustees are not domiciled here. Jeffrey is a resident of Colorado, and Moore is a resident of Washington. The petitions aver that Jeffrey takes the lead on investment decisions, which is a central part of trust administration. If the trusts were reformed as contemplated by the petitions, then there is good reason to

doubt that Delaware would be the principal place of administration. As discussed above, the Investment Direction Adviser and the Trust Protector will carry out the bulk of a trustee's traditional duties, functions, and responsibilities. Neither the Investment Direction Adviser or the Trust Protector will live, work, or make trust-related decisions in Delaware. Perhaps the necessary factual showing could be made, but it has not been made to date.

This Court is therefore not in a position to address the change of situs. Regardless, for the reasons discussed in the previous section, changing the situs of the trusts would not change the law governing administration.

## D. Reformation

The petitions seek to reform the trusts to modify their choice of law provisions, change the number of trustees, create the positions of Investment Direction Adviser and Trust Protector, establish powers for the new positions and limit the duties of the sole trustee, and provide broad exculpation from liability for the trustee and indemnification for the Investment Direction Adviser and Trust Protector. Whether the 1953 Trusts and the 1975 Trusts can or should be reformed is a matter governed by New York law. Whether the 1957 Trust can or should be reformed is a matter governed by New Jersey law. The petitions do not address the parameters of New York or New Jersey law, and the issues have not been briefed. This Court is therefore not in a position to address the requests for reformation.

## E. Accepting Jurisdiction Over The Trusts

██ The petitions ask the Court to accept jurisdiction over the trusts. The trusts will not have any ongoing obli-

gations to the Court, and the trustees will not be submitting accountings. Under the circumstances, it is not clear what accepting jurisdiction over the trusts would mean. Equally important, there is a risk that such a determination could imply a continuing jurisdictional relationship with this Court that could be invoked in response to other litigation filed elsewhere. *See, e.g., Bessemer Trust Co. of Del. N.A. v. Wilson*, 2011 WL 4484557, at *1 (Del. Ch. Sept. 28, 2011) (seeking declaratory judgments relating to trust from Delaware court in response to Florida tort action); *In re Trusts U/A/D December 30, 1996 & Trusts U/A/D January 13, 2006 Created by Farrell*, 2008 WL 5459270, at *3 (Del. Ch. Dec. 18, 2008) (seeking declaratory judgments relating to trust from Delaware court in response to Pennsylvania family court action). The Court will not accept an ill-defined, ongoing role that could be used for forum shopping.

## III. CONCLUSION

The petitions are denied. This matter is dismissed. Jurisdiction is not retained. **IT IS SO ORDERED.**